J. A03042/17

2017 PA Super 306

| | | |
|---|---|---|
| MARK HERSHEY FARMS, INC., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT T. ROBINSON, AS EXECUTOR OF | : | |
| THE ESTATE OF LONNIE L. ROBINSON; | : | |
| SCOTT T. ROBINSON, INDIVIDUALLY; | : | |
| MEADOW VALLEY DAIRY, INC.; 915 | : | |
| GALEN HALL ROAD ASSOCIATES, L.P.; | : | |
| JESSICA COW II, LLC, AND MED O | : | |
| VALLEY FARMS, A PENNSYLVANIA | : | |
| PARTNERSHIP | : | |
| | : | No. 1070 MDA 2016 |
| APPEAL OF: SCOTT T. ROBINSON | : | |

Appeal from the Judgment Entered June 14, 2016
In the Court of Common Pleas of Lebanon County
Civil Division at No.: 2010-02612

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

OPINION BY DUBOW, J.:                          **FILED SEPTEMBER 27, 2017**

Appellant, Scott T. Robinson, individually, appeals from the June 14, 2016 Judgment entered by the Lebanon County Court of Common Pleas after a bench trial. We reverse.

The relevant facts, as gleaned from the certified record, are as follows. Mark Hershey Farms, ("Appellee"), manufactures, sells, and delivers feed for dairy cattle to individual farms. Appellant's father, Lonnie Robinson ("Lonnie"), operated a dairy farm. Various corporate entities, of which Lonnie was the sole shareholder, not only owned the land on which the dairy

farm operated, but also operated the business itself. One of these corporations, Meadow Valley Dairy, Inc. ("Meadow Valley") operated the farm and purchased feed from Appellee.

On February 13, 2009, Lonnie died. At this point, Meadow Valley owed Appellee approximately $118,741.31 for previously delivered feed.

Lonnie's Will named Appellant to be the executor of his estate. Appellant probated Lonnie's Will in Orphans' Court in York County, which issued Letters Testamentary on February 19, 2009. Appellant was the sole beneficiary of the estate.

As a result of Lonnie's death, Lonnie's shareholder interest in Meadow Valley, as well as other assets, transferred to the estate. Thus, it was the estate that owned the shareholder interest in Meadow Valley.

The trial court found that Lonnie, when alive, paid the operating expenses of Meadow Valley from his personal account and the estate paid the operating expenses from the estate's funds after Lonnie died:

> Lonnie L. Robinson is the owner of 100 percent of the stock of this corporation, which is the operating corporation for the dairy farm located at 915 Galen Hall Road. **All of the operating expenses of Meadow Valley Dairy, Inc. were paid directly by Lonnie L. Robinson from his personal accounts during his lifetime, and after his death, by the estate in order to continue the operation of the dairy farm** at 915 Galen [Hall] Road [] until such time as the milk market improves and this asset can be liquidated by the estate.

Trial Court Opinion, 2/8/16, at 5 (emphasis added).

After Lonnie's death, Appellant, in his capacity as executor of the estate and employee of Meadow Valley, continued operating the dairy farms. In such a capacity, Appellant ordered feed from Appellee. Appellee delivered the feed to Meadow Valley, but Meadow Valley did not pay Appellee because of a difficult business climate. By October 2010, Meadow Valley owed Appellee a total of $413,190.29. Appellant also made to Meadow Valley substantial personal loans to keep the farm afloat and thus, became a creditor of Meadow Valley.

It should be emphasized that Appellant as the executor had the authority to transfer the assets of Lonnie's Estate, including the shareholder interest in Meadow Valley, to himself as the estate's beneficiary. Appellant, however, chose not to distribute the assets and Appellee never filed a Surcharge requesting that a court order Appellant to do so. Consequently, during the time of this litigation, it was the Estate of Lonnie, and not Appellant, who owned the shareholder interest in Meadow Valley.

On October 21, 2010, Appellee initiated the instant action by filing a Complaint against the following individuals and entities: Appellant individually, Appellant as Executor of Lonnie's Estate, Meadow Valley Dairy, Inc., 915 Galen Hall Road Associates, Jessica Cow II, LLC, Med O Valley Farms, and Meadow Valley Dairy Farm.

Appellee's two counts against Appellant individually were (1) breach of contract based on a handwritten letter that Appellant gave Appellee, and (2)

unjust enrichment based on the feed deliveries to Meadow Valley from which Appellee alleged that Appellant personally benefited. For a remedy, Appellee sought specific money damages.

Prior to trial, the parties submitted a Joint Pre-Trial Stipulation on February 16, 2015. The Stipulation held all defendants liable for the entire amount of $413,190.29, except Appellant in his individual capacity. As a result, the only issue remaining for trial was Appellant's personal liability for the feed that Meadow Valley purchased based upon the two counts described above.

Following a bench trial, the trial court rendered its written verdict in favor of Appellee and against Appellant individually in the amount of $413,190.29. Although it was the Estate of Lonnie, and not Appellant, who was a shareholder of Meadow Valley, the trial court extended the principle of piercing the corporate veil to hold Appellant in his capacity as the sole beneficiary of Lonnie's Estate personally liable for Meadow Valley's debt. Trial Court Opinion, 2/8/16, at 10. After the filing of Post-Trial Motions, the trial court also found Appellant individually liable on the alternative basis of unjust enrichment. Trial Court Opinion, 6/14/16, at 6-8.

On June 14, 2016, following Post-Trial Motions, the trial court filed an Order amending the verdict award to $294,448.98 and entering Judgment in that amount.[1]

On June 29, 2016, Appellant filed a timely Notice of Appeal. The trial court filed a Pa.R.A.P. 1925(a) Opinion, but did not order Appellant to file a Rule 1925(b) Statement.

Appellant presents the following issues for our review:

[1.] Whether the [t]rial [c]ourt erred in thrice concluding that it had subject matter jurisdiction over questions concerning the administration of an estate.

[2.] Whether the [t]rial [c]ourt erred in concluding that a defendant exercising control of business entities solely in his capacity as executor of an estate can be held personally liable for breach of contract under a theory of piercing the corporate veil in light of Section 3333.1 of the Probate Estates and Fiduciaries Code, 20 Pa.C.S. § 3333.1.

3. Whether the [t]rial [c]ourt erred in finding that the Appellant's failure to close the Estate and distribute to himself the equitable interests of the [b]usiness [d]efendants to himself was based on "his desire to shield himself from liability while he incurred substantial debt in the corporation" where no evidence of record was presented which would support such a conclusion.

4. Whether the [t]rial [c]ourt erred in declining to consider factors relevant to the ultimate determination of whether upholding the corporate identity would lead to unjust results, holding instead that "the existence of any possible justification for his disregard of corporate formalities and intermingling of personal, estate, and corporate funds is irrelevant to our

---

[1] The reduction accounted for $118,741.31, which Appellee conceded was "the value of the feed delivered [before Appellant] assumed control of the dairy business." Trial Court Opinion, 6/14/16, at 6.

determination of whether the corporate form should be disregarded."

[5. [Whether the] [l]ower [c]ourt [e]rred in finding that [Appellant] had been unjustly enriched as a result of [Appellee's] shipment of feed to Meadow Valley[?]]

Appellant's Brief at 4 (reordered and supplemented).[2]

We review an order following a bench trial with the following principles in mind:

Our review in a nonjury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the nonjury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

***Hollock v. Erie Insurance Exchange***, 842 A.2d 409, 413–14 (Pa. Super. 2004) (*en banc*) (citations and quotation marks omitted).

In his first issue, Appellant challenges the trial court's exercise of subject matter jurisdiction over this matter, which Appellant characterizes as

_____

[2] In his Brief, Appellant omitted pages 5 and 6, which apparently included his fifth question presented on appeal concerning the unjust enrichment claim, as well as the first page of the Summary of the Case. Appellant included the fifth question presented in his table of contents, as well as in the Argument section of his Brief. As a result, we decline to find waiver and we will address the merits of this fifth claim on appeal.

"questions concerning the administration of an estate." Appellant's Brief at 4.

The orphans' court's jurisdiction is purely a creature of statute. ***In re Shahan***, 631 A.2d 1298, 1301 (Pa. Super. 1993). That court is required, in relevant part, to exercise jurisdiction over the following matters:

> Except as provided in section 712 (relating to nonmandatory exercise of jurisdiction through the orphans' court division) … the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:
>
> **(1) Decedents' estates.** The administration and distribution of the real and personal property of decedents' estates and the control of the decedent's burial.
>
> \* \* \*
>
> **(12) Fiduciaries.** The appointment, control, settlement of the accounts of, removal and discharge of, and allowance to and allocation of compensation among, all fiduciaries of estates and trusts, jurisdiction of which is exercised through the orphans' court division, except that the register shall continue to grant letters testamentary and of administration to personal representatives as heretofore.

20 Pa.C.S. § 711.

In addition to the mandatory exercise of jurisdiction over matters such as those outlined above, Orphans' Court is also vested with the authority to exercise non-mandatory jurisdiction, in relevant part, over "[t]he disposition of any case where there are substantial questions concerning matters enumerated in section 711 and also matters not enumerated in that section." 20 Pa.C.S. § 712.

In addressing the issue of subject matter jurisdiction at the preliminary objection stage, the trial court in the instant case concluded that because this was a contract claim and not related to the administration of the estate, Orphans' Court lacked jurisdiction:

> Defendant contends because one of the named Defendants is the Executor of an estate, that this action **must** be brought in the Orphans' Court division. **This case, however, is a contract claim and not necessarily related to the administration of Decedent's estate.**
>
> * * *
>
> Because this action involves claims not enumerated in [S]ection 711 and, if we were to agree with Defendant, claims that are enumerated in [S]ection 711, [S]ection 712 provides for concurrent jurisdiction in either the Orphans' Court Division or the Civil Division. Accordingly, we find that this Court has jurisdiction to hear this controversy. Plaintiff brought suit in the Civil Division where it was entitled to do so. We will not disturb this choice of law.

Trial Court Opinion, 9/6/11, at 3-4 (emphasis added and in original). We agree with the trial court that because Appellee filed the Complaint that was based upon a breach of contract and did not directly raise any issues regarding the administration of an estate, the trial court properly exercised subject matter jurisdiction over this matter.[3]

In his second issue, Appellant avers that the trial court erred as a matter of law "in finding [Appellant] liable for breach of contract on a

_____

[3] If this litigation involved Appellee's attempt to require Appellant to distribute the estate's ownership interest in Meadow Valley by filing a Surcharge, Orphans' Court may have had jurisdiction. Appellee never filed for a Surcharge and this case solely involves a breach of contract.

piercing the corporate veil theory[]" because "[t]his theory of liability has been applied almost exclusively to hold [a shareholder] liable for the debts of a business entity." Appellant's Brief at 10, 13 (citation omitted). In other words, the issue in this case is whether the trial court properly extended the concept of piercing the corporate veil to hold a beneficiary of an estate personally liable for the debts of an estate. We agree with Appellant that there is no legal authority to extend the theory of piercing the corporate veil and the trial court erred in doing so.

Pennsylvania carries a strong presumption against piercing the corporate veil. **Fletcher-Harlee Corp. v. Szymanski**, 936 A.2d 87, 95 (Pa. Super. 2007). The corporate entity should be upheld unless specific, unusual circumstances call for an exception. **See Lumax Indus., Inc. v. Aultman**, 669 A.2d 893, 895 (Pa. 1995).

Further, when it is appropriate to pierce the corporate veil, it is the shareholder, and not some other entity, who is held liable:

> [T]he general rule is that a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person... **In deciding whether to pierce the corporate veil, courts are basically concerned with determining if equity requires that the shareholders' traditional insulation from personal liability be disregarded** and with ascertaining if the corporate form is a sham, constituting a facade for the operations of the dominant shareholder. Thus, we inquire, *inter alia,* whether corporate formalities have been observed and corporate records kept, whether officers and directors other than the dominant shareholder himself actually function, and whether the dominant shareholder has used the assets of the corporation as if they were his own.

*Fletcher-Harlee Corp., supra* at 95-96 (emphasis added).  *See Village at Camelback Property Owners Assn. Inc. v. Carr*, 538 A.2d 528, 532 (Pa. Super. 1988) (explaining that only shareholders may be liable for the acts of a corporation when piercing the corporate veil).

The trial court, without citing any legal authority, held Appellant personally liable as a beneficiary of the estate even though it was the estate that owned the shares of Meadow Valley:

> While it is true that [Appellant] himself never actually came into a position of direct ownership, we believe that he was capable of holding an equitable interest in the corporation and that he did hold an indirect interest in the corporation by virtue of his status as the sole beneficiary of Lonnie's Estate.

Trial Court Opinion, 2/8/16, at 10.

There is, however, no legal basis to apply the concept of piercing the corporate veil to a beneficiary of an estate and hold a beneficiary of an estate liable for debts of the estate. Such a broad rule would be contrary to the limited nature of this narrow exception to the strong presumption against piercing the corporate veil.

The trial court erroneously focuses on the fact that Appellant's "failure to attain an ownership position was due to his own failure to carry through with the administration of Lonnie's Estate and his desire to shield himself from liability while he incurred additional substantial debt in the name of the corporation."  Trial Court Opinion, 2/8/16, at 10-11.  There is, however, a process for forcing Appellant to transfer the ownership interest in Meadow

Valley from the estate to Appellee by filing a Surcharge or petition to remove the executor. Appellee failed to do so and the trial court, especially after rejecting any subject matter jurisdiction in Orphan's Court, cannot treat the transfer as occurring.

The trial court was particularly disturbed by Appellant's actions and, at least in part, "pierced the corporate veil in order to rectify this unjust situation." Trial Court Opinion, 2/8/16, at 11. We find ample support in the certified record for the trial court's factual findings regarding Appellant's utterly irresponsible actions and his "failure to carry through with the administration of Lonnie's Estate and [Appellant's] desire to shield himself from liability while he incurred additional substantial debt in the name of the corporation[…] in total disregard of the rights of creditors[.]" Trial Court Opinion, 2/8/16, at 10-11. However, it is Appellee who had a remedy to force Appellant to distribute the assets of the estate by filing a Surcharge or Petition to Remove the Executor.

After careful review, we conclude that the trial court erred as a matter of law in piercing the corporate veil to assess personal liability on Appellant who was not a shareholder of Meadow Valley, but merely a beneficiary of the estate.[4]

---

[4] As a result of our holding that the trial court erred in applying the concept of piercing the corporate veil to a beneficiary of an estate, we need not address the issue of whether the trial court properly applied the elements of

In his fifth claim on appeal, Appellant avers that the trial court erred as a matter of law in finding him liable under a theory of unjust enrichment because Appellant "appreciated no benefit from the delivery of feed" and because "a valid and enforceable contract existed for the delivery of feed to Meadow Valley."  Appellant's Brief at 21.

"An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law."  **Discover Bank v. Stucka**, 33 A.3d 82, 88 (Pa. Super. 2011) (citation omitted).  "The elements of unjust enrichment are [(1)] benefits conferred on defendant by plaintiff, [(2)] appreciation of such benefits by defendant, and [(3)] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  **Id.**  "Whether the doctrine applies depends on the unique factual circumstances of each case[.]"  **Id.** (citation omitted).

"To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain."  **Gutteridge v. J3 Energy Group, Inc.**, ___ A.3d ___, 2017 PA Super 150 at *6 (Pa. Super. filed May 17, 2017) (*en banc*) (citation omitted).  "The doctrine does not apply simply because the defendant may

---

the concept of piercing the corporate veil to the facts of this case.  We also need not address Appellant's related third and fourth issues.

have benefited as a result of the actions of the plaintiff." *Id.* (citation omitted).

"A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *Discover Bank*, *supra* at 88 (internal quotation marks omitted). This Court has previously held that "[t]he doctrine of unjust enrichment is clearly inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Roman Mosaic & Tile Co., Inc. v. Vollrath*, 313 A.2d 305, 307 (Pa. Super. 1973) (citations and quotation marks omitted). *See also Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421, 428 (Pa. Super. 2016) (recognizing the same principle).

Here, Appellee failed to demonstrate that it was Appellant himself, and not Meadow Valley, who directly received the benefits of the feed that Appellee delivered to Meadow Valley. The trial court found that: (1) an agreement existed between Appellee and Meadow Valley for the delivery of feed; (2) Appellant appreciated the benefits of the feed for the cows "as an important corporate asset"; and (3) Appellant "was solely in the position to benefit from [Appellee's] delivery of the feed for the protection of the corporate assets[.]" Trial Court Opinion, 6/14/16, at 8.

In other words, and consistent with the trial court's conclusions above, Appellee delivered the feed directly to Meadow Valley, and the feed became Meadow Valley's corporate asset—not Appellant's personal asset—upon delivery. Meadow Valley utilized the feed and derived the resulting benefits. There was no evidence that Appellant used the feed for another farm that he owned or any other personal use.

By imposing liability on Appellant, the trial court ignored the fact that there is no evidence in the record demonstrating that Appellant, as opposed to Meadow Valley, personally benefited from the feed. To the extent that Appellant benefitted, it was as a result of Appellant's position of beneficiary of the estate and potential shareholder of Meadow Valley and thus, an indirect and potential benefit.

Moreover, the trial court's conclusions contradict its own previous findings of fact, namely, that Appellant "took over the operation of [his father's] dairy business and continued to order deliveries of feed through [Meadow Valley]. Bills were placed in the name of [Meadow Valley]." Trial Court Opinion, 2/8/16, at 3. Given that it was Meadow Valley who directly benefited from the deliveries of the feed, and not Appellant personally, the record does not support the trial court's finding that only Appellant personally benefited from the feed delivery. Rather, it was Meadow Valley who benefited from the feed deliveries and used the feed as a corporate asset.

After careful review, we hold that the trial court erroneously concluded that Appellant was enriched unjustly under these particular circumstances since he did not personally and directly receive the benefit of the feed deliveries. For this independent reason, we must reverse the June 14, 2016 Judgment on this ground as well.

Order reversed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2017