NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2221

_____

JEREMY ARGUE,

Appellant

v.

TRITON DIGITAL INC.; ANDO MEDIA LLC;
VECTOR TRITON (LUX) 1, S.A.R.L.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-16-cv-00133)
District Judge: Honorable Mark A. Kearney

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 1, 2018

Before: SMITH, *Chief Judge*, HARDIMAN, and RESTREPO, *Circuit Judges*.

(Opinion Filed:  May 4, 2018)

_____

OPINION*

_____

_____

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

While working for Defendants Ando Media LLC and Triton Digital Inc., Plaintiff Jeremy Argue proposed a number of valuable improvements to his employers' internet radio technology. After he was terminated from Triton, Argue believed that the companies had never fairly compensated him for his contributions. Argue sued in the United States District Court for the Western District of Pennsylvania, claiming that his ideas were proprietary and that Ando and Triton had unjustly enriched themselves at his expense. The District Court disagreed and granted summary judgment for Defendants. We will affirm.

I

A

Triton is a technology company serving the internet radio industry. Triton's software products enable radio stations to stream audio over the internet, collect data about their listeners, deliver targeted advertising, engage with their audiences, and sell advertising opportunities. Ando is now a wholly-owned subsidiary of Triton, but before its acquisition by Triton it developed a significant portion of the products that Triton currently offers.[1]

Argue began working for Ando in 2008 as a Support Engineer. His written employment agreement stated that Ando would own any inventions, products, or methods that Argue created in the course of his employment. When Triton bought Ando in 2009,

---

[1] Defendant Vector Triton (Lux) 1, S.A.R.L., no longer exists, having been merged into other entities owned by one of Triton's corporate parents.

Argue became a Triton employee. Argue's written agreement with Ando was never assigned to Triton, and Argue never signed a written agreement with his new employer.

Argue was by all accounts a productive employee during his time with Triton and Ando, as demonstrated by the series of promotions Argue received. In about four years Argue went from working as an Ando Support Engineer to serving as Triton's Director of Audio Strategy. Each of Argue's roles at Triton and Ando was primarily customer-facing. He would teach customers how to use Triton/Ando products, assist them with technical issues, and help them develop advertising strategies.

Argue's familiarity with customer needs also gave him a role to play in Ando and Triton's product-development process. Throughout his time working for those companies, Argue would receive customer feedback and pass it along to his colleagues who were involved in improving their products. That role was made explicit in Argue's official job description as he moved into leadership positions at Triton. As Director of Advertising Strategy, Argue was expected to "[l]iaise with other departments," including the product and engineering teams, "to ensure that all products . . . promote[d] established advertising strategy goals and objectives." App. 1188. But even before Triton listed that role in Argue's duties, he felt it was "part of everybody's job" to share customer feedback—regardless of whether it was "listed in the specific bullet points" of a formal job description. App. 1169–70. Argue testified that he shared feedback with his colleagues specifically so that Ando and Triton could "incorporate that feedback into [their] operations." App. 1164–65. Prior to Ando's acquisition, he even "worked specifically with the lead product manager . . . and the head of engineering . . . [as] an

3

informal committee to oversee, advance, and manage . . . products." App. 1220. That team would improve Ando's products by incorporating the customer feedback that Argue passed on.

The parties do not dispute that Argue contributed to the development of Ando and Triton's products. Some of those contributions originated directly from client feedback that Argue relayed to his colleagues, and others appear to have been his own ideas. Argue characterizes those contributions to Triton and Ando's products as "inventions," and maintains that because he was not "hired to invent," those ideas belonged to him, not his employers. Argue Br. 20. In addition to disputing that Argue's ideas qualified as "inventions," Defendants maintain that Argue was simply "doing his . . . job" by proposing improvements to his employers' products. Defs. Br. 28. In Ando and Triton's view, Argue was already paid a salary to play that part, and no reasonable jury could find that it was unjust for his employers to profit from his efforts.

Vector bought Triton in 2015, and Triton terminated Argue shortly thereafter. At the time he was terminated, Argue was paid about $108,000 in salary and received an annual bonus of around $5,000. Argue's base salary had increased every year he spent at Triton, and he had never asked for additional compensation.

B

Argue brought suit in 2016, asserting three claims for relief. First, he alleged that since his "inventions" contributed to Triton's valuation in its sale to Vector, it was unjust for Triton and/or Ando to retain all of the consideration received in that sale without paying Argue for the value of his ideas. Second, he alleged that Defendants had

4

converted his "inventions" to their own use. Third, he sought a declaration that he is an inventor and an owner of several patents and patent applications—relating to products called Content Wire and a2x— which he claimed were based on his ideas.

The District Court granted in part Defendants' motion to dismiss for failure to state a claim. The Court dismissed Argue's claims as preempted by federal patent law to the extent they challenged the validity of any patent, disputed a pending patent application, or sought a declaration of inventorship. But it denied Defendants' motion as to any claims for unjust enrichment, conversion, or declaratory relief to the extent that Argue could plead them purely under state law.

Argue filed an amended complaint, and Defendants moved to strike large portions of it as falling outside the scope of the state law theories previously approved by the District Court. The Court agreed. It struck all references to Argue's ownership of patents or of materials subject to patent applications. Importantly, it also struck Argue's conversion and declaratory judgment claims. The Court did so because those claims were not brought under the state law theory that Defendants had "converted [Argue's] . . . work papers and work product," but rested instead on the essentially federal (and therefore preempted) theory that Defendants had misappropriated his useful *ideas*. App. 81, 83–84.

With Argue's case limited to a single unjust enrichment claim, the parties conducted discovery and Defendants moved for summary judgment. The District Court granted that motion, and Argue timely appealed.

II[2]

A

The elements of an unjust enrichment claim under Pennsylvania law are "(1) benefits conferred on defendant by plaintiff, (2) appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. Ct. 2017) (citation and modifications omitted). Unjust enrichment does not exist whenever one party benefits another; rather, a plaintiff must show circumstances that would make it "unconscionable" for the defendant to retain the benefit conferred. *Id.* (citation omitted). "The most important factor . . . is whether the enrichment of the defendant is *unjust*." *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995).

Assuming without deciding that Argue made valuable contributions to his employers' products, and that Defendants have been enriched as a result, we consider whether that enrichment was unjust. That issue turns on one factual question: when Argue proposed the relevant improvements to Ando and Triton's products, was he essentially doing what those companies were already paying him to do, or was he so exceeding the scope of those duties that it might be unjust not to compensate him further?

_____

[2] The District Court had jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment, *Paladino v. Newsome*, 885 F.3d 203, 207 n.16 (3d Cir. 2018), and may affirm for any reason supported by the record, *Grp. Against Smog and Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 n.12 (3d Cir. 2016).

There is no dispute on the governing law—Argue concedes that he "cannot claim unjust enrichment if [he was] just doing [his] job" Argue Br. 37 (quoting *Bowden v. Schenker*, 2016 WL 3981354, at \*5 (E.D. Pa. July 25, 2016), *aff'd*, 693 F. App'x 157, 160 (3d Cir. 2017)).

Argue described in his deposition what he considered his "inventive" work. First, he would use his "exceptional industry knowledge" to evaluate what existed in the market, what gaps there were in the market, and "what could help clients." App. 1229. Then he would "distill[] that information down into new feature sets and new inventions that [Ando/Triton] could use to help [clients]." *Id.* Finally, he would pass those ideas on to the "product teams" at Ando and Triton. App. 1229–30.

The District Court found no genuine dispute that this was anything other than "the work Defendants paid Mr. Argue to do." *Argue v. Triton Digital, Inc.*, 2017 WL 1611254, at \*4 (W.D. Pa. Apr. 28, 2017). We agree. Helping Ando and Triton keep up on trends and opportunities in the internet radio marketplace was an important part of Argue's job duties. Sometimes that involved passing on immediate customer feedback, something Argue considered as a matter of "common sense" to be "part of everybody's job." App. 1169–70. Other times that meant traveling overseas for discussions with potential customers and visits to industry conferences. Moreover, it was always the expectation that Argue would use his industry knowledge to help his employers improve their product offerings. As Director of Advertising Strategy at Triton, Argue's job duties included "[l]iais[ing]" with other departments—including the product and engineering teams—"to ensure that all products . . . promoted established advertising strategy goals."

7

App. 1188. Indeed, the internal announcement of Argue's promotion to that role specifically stated that he would "provide a channel of communication back to the product team." App. 1325, 1331.

In sum, we agree with the District Court that the record shows that by maintaining up-to-date industry knowledge, identifying needs in the marketplace, and proposing product improvements to meet those needs, Argue was simply doing his job.[3] Because he did so voluntarily and without promises of or requests for additional compensation, we agree with the District Court that no reasonable jury could find that Defendants were unjustly enriched.[4]

B

Argue raises two other arguments on appeal, neither of which persuades us to disturb the judgment of the District Court.

First, Argue objects to the District Court's decision to strike his conversion and declaratory judgment claims from his amended complaint. The essence of his challenge appears to be that the District Court abused its discretion by striking his claims as

---

[3] Argue makes much of the fact that he was never specifically hired or assigned "to make inventions or develop new products," Argue Br. 37–38, but that narrow view of the scope of Argue's employment is inappropriate in this context. Unjust enrichment is "essentially an equitable doctrine," *Schenck*, 666 A.2d at 328 (citation omitted), in which "our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched," *id.* Whether Argue acted precisely within the confines of his job duties does not determine whether it was unjust for Ando and Triton to profit from his work.

[4] Because summary judgment was appropriate, we do not reach the District Court's alternative holdings that Argue's unjust enrichment claim is either preempted by federal patent law or barred by the written contract between Argue and Ando.

inconsistent with his representation at oral argument that he would pursue only non-patent claims. Argue claims he never actually made such a representation, but we need not resolve that dispute to dispose of his challenge on appeal. In ruling on Defendants' motion to dismiss for failure to state a claim, the District Court dismissed Argue's complaint to the extent it asserted federal patent rights "under a guise of state law." App. 82 n.1 (citation omitted). The Court's subsequent order granting Defendants' motion to strike simply trimmed material from Argue's amended complaint that continued to assert claims preempted by federal patent law in contravention of the earlier dismissal.

Both of those rulings relied not on Argue's representation about the scope of his claims—which the District Court mentioned only to the extent that they "clarified" the issues, App. 82 n.1, 84 n.1—but on an independent analysis of federal patent preemption. Since Argue makes no argument addressed to the actual basis for the District Court's ruling, focusing instead on an essentially collateral issue, he has forfeited his challenge on appeal.

Argue's final claim is that the District Court abused its discretion by refusing to compel Defendants to answer an interrogatory expanding on the affirmative defenses listed in their answer. Even if that were error, however, Argue does not contend that it independently merits reversal. Rather, he asks us to order discovery re-opened only "if and when" we vacate and remand to the District Court. Argue Br. 47. Our decision to affirm vitiates this claim.

\* \* \*

For the foregoing reasons, we will affirm the District Court's summary judgment.

9