J-A13018-21

2021 PA Super 205

| | | |
|---|---|---|
| PATRICIA M. HARLEY R.N., MARTHA MOODY R.N., HOLLY DICARLO R.N. AND WENDY POYNOR R.N. FOR THEMSELVES AND AS REPRESENTATIVES OF OTHERS SIMILARLY SITUATED, | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| | : : | No. 2405 EDA 2019 |
| v. | : : : : | |
| HEALTHSPARK FOUNDATION (F/K/A NORTH PENN COMMUNITY HEALTH FOUNDATION) AND DAVID T. SHANNON  JOSH SHAPIRO, ATTORNEY GENERAL | : : : : : : : : | |
| Intervenor | : | |

Appeal from the Order Dated July 15, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  03-12669

| | | |
|---|---|---|
| PATRICIA M. HARLEY R.N., MARTHA MOODY R.N., HOLLY DICARLO R.N. AND WENDY POYNOR R.N. FOR THEMSELVES AND AS REPRESENTATIVES OF OTHERS SIMILARLY SITUATED, | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| | : : | No. 2407 EDA 2019 |
| v. | : : : : | |
| HEALTHSPARK FOUNDATION (F/K/A NORTH PENN COMMUNITY HEALTH FOUNDATION) AND DAVID T. SHANNON  JOSH SHAPIRO, ATTORNEY GENERAL | : : : : : : | |

|  | : |  |
| --- | --- | --- |
| Intervenor | : |  |

Appeal from the Order Dated July 15, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 03-12669

| PATRICIA M. HARLEY R.N., MARTHA MOODY R.N., HOLLY DICARLO R.N. AND WENDY POYNOR R.N. FOR THEMSELVES AND AS REPRESENTATIVES OF OTHERS SIMILARLY SITUATED, | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- | --- |
|  | : |  |
| Appellants | : |  |
|  | : | No. 2408 EDA 2019 |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| HEALTHSPARK FOUNDATION (F/K/A NORTH PENN COMMUNITY HEALTH FOUNDATION) AND DAVID T. SHANNON  JOSH SHAPIRO, ATTORNEY GENERAL | : : : : : : | |
|  | : |  |
| Intervenor | : |  |

Appeal from the Order Dated July 15, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 03-12669

| PATRICIA M. HARLEY R.N., MARTHA MOODY R.N., HOLLY DICARLO R.N. AND WENDY POYNOR R.N. FOR THEMSELVES AND AS REPRESENTATIVES OF OTHERS SIMILARLY SITUATED, | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- | --- |
|  | : |  |
| Appellants | : |  |
|  | : |  |
|  | : | No. 2409 EDA 2019 |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |

J-A13018-21

HEALTHSPARK FOUNDATION (F/K/A     :
NORTH PENN COMMUNITY HEALTH        :
FOUNDATION) AND DAVID T.           :
SHANNON  JOSH SHAPIRO,             :
ATTORNEY GENERAL                   :
                                   :
               Intervenor          :

Appeal from the Order Dated July 15, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  03-12669

PATRICIA M. HARLEY R.N., MARTHA    :     IN THE SUPERIOR COURT OF
MOODY R.N.,  HOLLY DICARLO R.N.,   :          PENNSYLVANIA
AND WENDY POYNOR, R.N. FOR         :
THEMSELVES AND AS                  :
REPRESENTATIVES OF OTHERS          :
SIMILARLY SITUATED                 :
                                   :
               Appellant           :
                                   :     No. 2512 EDA 2019
                                   :
          v.                       :
                                   :
                                   :
HEALTHSPARK FOUNDATION (F/K/A      :
NORTH PENN  COMMUNITY HEALTH       :
FOUNDATION),  AND DAVID T.         :
SHANNON  JOSH SHAPIRO,             :
ATTORNEY GENERAL                   :
                                   :
               Intervenor          :

Appeal from the Judgment Entered July 17, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 03-12669

PATRICIA M. HARLEY R.N., MARTHA    :     IN THE SUPERIOR COURT OF
MOODY R.N.,  HOLLY DICARLO R.N.,   :          PENNSYLVANIA
AND WENDY POYNOR, R.N.             :
                                   :
               Appellants          :
                                   :
                                   :
          v.                       :

- 3 -

:     No. 2618 EDA 2019
:
HEALTHSPARK FOUNDATION (F/K/A    :
NORTH PENN  COMMUNITY HEALTH   :
FOUNDATION),  AND DAVID T.        :
SHANNON  JOSH SHAPIRO,        :
ATTORNEY GENERAL            :
                                   :
        Intervenor       :

Appeal from the Judgment Entered August 15, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2003-12669

PATRICIA M. HARLEY R.N., MARTHA   :     IN THE SUPERIOR COURT OF
MOODY R.N., HOLLY DICARLO R.N.,    :          PENNSYLVANIA
AND WENDY POYNOR, R.N.        :
                                   :
         Appellants       :
                                   :
                                   :
          v.               :
                                   :     No. 2619 EDA 2019
                                   :
HEALTHSPARK FOUNDATION (F/K/A    :
NORTH PENN  COMMUNITY HEALTH   :
FOUNDATION),  AND DAVID T.        :
SHANNON  JOSH SHAPIRO,        :
ATTORNEY GENERAL            :
                                   :
        Intervenor       :

Appeal from the Judgment Entered August 15, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2003-12669

PATRICIA M. HARLEY R.N., MARTHA   :     IN THE SUPERIOR COURT OF
MOODY R.N.,  HOLLY DICARLO R.N.,    :          PENNSYLVANIA
AND WENDY POYNOR, R.N.        :
                                   :
         Appellants       :
                                   :
                                   :
          v.               :
                                   :     No. 2620 EDA 2019

- 4 -

|  | : |  |
|---|---|---|
| HEALTHSPARK FOUNDATION (F/K/A NORTH PENN COMMUNITY HEALTH FOUNDATION), AND DAVID T. SHANNON  JOSH SHAPIRO, ATTORNEY GENERAL | : : : : : : | |
| Intervenor | : | |

Appeal from the Judgment Entered August 15, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2003-12669

| PATRICIA M. HARLEY, R.N., MARTHA MOODY, R.N., HOLLY DICARLO, R.N. AND WENDY POYNER, R.N., FOR THEMSELVES AND AS REPRESENTATIVES OF OTHERS SIMILARLY SITUATED | : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | No. 3191 EDA 2019 |
| DAVID T. SHANNON, AND HEALTHSPARK FOUNDATION (F/K/A NORTH PENN COMMUNITY HEALTH FOUNDATION), JOSH SHAPIRO, ATTORNEY GENERAL | : : : : : : : : : : | |
| APPEAL OF: JOSH SHAPIRO, ATTORNEY GENERAL | : : | |

Appeal from the Order July 17, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  03-12669

| PATRICIA M. HARLEY, R.N., MARTHA MOODY, R.N., HOLLY DICARLO, R.N. AND WENDY POYNER, R.N., FOR THEMSELVES AND AS REPRESENTATIVES OF OTHERS SIMILARLY SITUATED | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|

- 5 -

J-A13018-21

|  |  |  |
|---|---|---|
| v. | : | No. 3195 EDA 2019 |
| | : | |
| | : | |
| | : | |
| HEALTHSPARK FOUNDATION AND | : | |
| DAVID T. SHANNON, JOSH SHAPIRO, | : | |
| ATTORNEY GENERAL | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: HEALTHSPARK | : | |
| FOUNDATION AND DAVID T. | : | |
| SHANNON | : | |

Appeal from the Order Dated July 15, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 03-12669

|  |  |  |
|---|---|---|
| PATRICIA M. HARLEY, R.N., MARTHA | : | IN THE SUPERIOR COURT OF |
| MOODY, R.N., HOLLY DICARLO, | : | PENNSYLVANIA |
| R.N., AND WENDY POYNER, R.N., | : | |
| FOR THEMSELVES AND AS | : | |
| REPRESENTATIVES OF OTHERS | : | |
| SIMILARLY SITUATED | : | |
| | : | |
| | : | |
| | : | |
| v. | : | No. 3197 EDA 2019 |
| | : | |
| | : | |
| | : | |
| HEALTHSPARK FOUNDATION AND | : | |
| DAVID T. SHANNON  JOSH SHAPIRO, | : | |
| ATTORNEY GENERAL | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: HEALTHSPARK | : | |
| FOUNDATION AND DAVID T. | : | |
| SHANNON | : | |

Appeal from the Judgment Entered July 17, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): No. 03-12669

BEFORE:   BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.*

---

* Former Justice specially assigned to the Superior Court.

- 6 -

OPINION BY DUBOW, J.:                    Filed: October 13, 2021

This appeal is based upon the claim of class action Appellants, former employees of Appellee North Penn Hospital ("NPH"), on their claim that NPH violated the Wage Payment Compensation Law ("WPCL"), 43 P.S. § 260.1, *et seq*, and common law by failing to compensate Appellants for leave benefits that Appellants claimed they "earned" during the course of 2001.[1] Defendants David T. Shannon and HealthSpark Foundation (f/k/a North Penn Community Health Foundation ("NPCHF") (collectively, "Appellees"), and Intervenor Josh Shapiro, Pennsylvania Attorney General ("OAG"), have each filed separate cross-appeals.

At its core, this case concerns the parties' differing interpretation of the fringe benefits policy pertaining to vacation and personal leave offered to Appellants by NPH.  Appellants claimed that, pursuant to NPH's benefits policies, they earned leave benefits over the course of 2001, but did not obtain the right to use them until January 1, 2002 (the "2002 Benefits"), and were not compensated for them before NPH sold its assets at the end of 2001.  NPH argued, to the contrary, that Appellants did not "earn" leave benefits during the course of 2001 because the NPH's benefits policies provided that an employee "earned" leave benefits on January 1 of a particular year.  Appellees concluded that since NPH had terminated the employment of Appellants before

_____

[1] When referring to vacation leave and personal leave benefits collectively, we use the term "leave benefits."

January 1, 2002, Appellees were not contractually obligated to compensate Appellants for the 2002 Benefits.[2]

We conclude that the policies at issue clearly and unambiguously provide that an employee "earned" her leave benefits for any given year on January 1 of that year and not during the course of the prior year. Because NPH terminated Appellants' employment before January 1, 2002, NPH policies did not obligate Appellees to compensate Appellants for 2002 Benefits and NPH had no ongoing contractual obligation to compensate Appellants for 2002 Benefits. Thus, after careful review, we affirm in part and reverse in part.

**Factual History**

NPH employed Appellants as nurses at its hospital in Lansdale, PA. As employees of NPH, NPH provided Appellants with leave benefits based on Appellants' individual status as part-time or full-time employees, whether they worked hourly or were salaried, their seniority, and the hours they worked in the previous year. NPH communicated its benefits policy to its employees in two ways: (1) in its employee handbook ("Handbook"); and (2) through its vacation benefits policy ("Policy"), as set forth in "Administrative Policies and Procedures No. 14-8."

---

[2] The parties do not dispute that NPH provided Appellants with the appropriate leave benefits for 2001. This litigation is focused on Appellants' right to 2002 Benefits, which Appellants argue accrued during 2001.

Of most relevance to the issues on appeal, the Policy states that part-time employees "earn" benefits on January 1 of each year:

> Vacation hours for part[-]time employees **are earned** on January 1st of each year.  Earned vacation hours **are determined** by the number of paid hours paid during the preceding calendar year.

Policy at II.A. (emphasis added).  Similarly, the Handbook provides that NPH provides leave benefits to an employee at the beginning of each calendar year.  It further provides that it calculates an employee's leave benefits based on the number of hours the employee worked in the previous year:

> Vacation allotment for part[-]time employees is provided at the beginning of each calendar year.  The vacation plan provides vacation hours **based on** the number of hours paid during the preceding calendar year according to [an attached schedule.]

Handbook at 17 (emphasis added).[3]  Thus, when read together these provisions provide that an employee of NPH "earns" vacation leave benefits for the upcoming year on January 1 of that year and that NPH calculates the amount of benefits "earned" based on the hours worked in the previous year.

**Sale of NPH to Universal in 2002**

On October 19, 2001, NPH entered into an agreement to sell its assets ("APA") to Universal Health System ("Universal"), a for-profit entity.  The APA

---

[3] The relevant provisions in the Handbook and Policy are identical for part-time employees and full-time hourly employees.  However, since the jury only awarded damages to part-time employees for vacation benefits, we will only focus on the relevant provisions concerning part-time employees and vacation benefits.

provided that the transfer of assets was to occur at 12:01 AM on January 1, 2002.[4]

The APA also provided that NPH would terminate the employment of all NPH employees, including Appellants, at 11:59 PM on December 31, 2001. It further provided that NPH employees could apply for employment at Universal to commence on January 1, 2002. Universal would then provide the former employees of NPH with 2002 personal leave benefits according to Universal's personal leave policies.

On November 14, 2001, NPH filed a Petition to Approve the Sale of Assets in the Orphan's Court.[5] Following a hearing, on December 28, 2001, the Orphan's Court entered an Order approving of the sale, effective January 1, 2002.[6]

**Procedural History**

_____

[4] On December 12, 2001, the parties amended the APA in ways that are not relevant to the instant appeal.

[5] Because NPH was a non-profit entity, the sale to Universal required approval by the OAG and the Montgomery County Orphan's Court.

[6] Upon closing on January 1, 2002, NPH amended its bylaws and articles of incorporation to become NPCHF, a non-profit entity that would use the proceeds of the sale "to promote the health of, and improve access to health care for, citizens of the greater Lansdale area." Later, in 2018, NPCHF changed its name to HealthSpark. Consequently, on June 27, 2018, Appellants filed a Motion to Amend the case caption and to amend the allegations in the Complaint to reflect this change, which the trial court granted.

On October 10, 2003, Appellants filed individual Amended Complaints alleging that Appellees failed to compensate Appellants for their 2002 Benefits and, thus, had violated Appellants' rights under the WPCL and common law. According to Appellants, the Policy and the Handbook provided that NPH employees "earned" leave benefits during the course of one year. Appellants asserted that, to the extent that the Handbook and Policy referred to January 1, that date was relevant to determine when the employee could "use" the leave benefits. Based on this interpretation of the Policy and the Handbook, Appellants concluded that when NPH terminated the employment of the class members on December 31, 2001, it failed to compensate the class members for leave benefits that the class members had "earned" in 2001, either by reimbursing the class members for those benefits or by requiring Universal to allocate those benefits to the class members for use in 2002. Appellants further concluded that, as a result, Appellees breached its employment contract with the class members and violated the WPCL.[7]

On October 30, 2003, Appellees filed Preliminary Objections to Appellants' Amended Complaint in which they, *inter alia*, disputed Appellants'

---

[7] The Complaint alleged claims of Breach of Contract, Promissory Estoppel, Unjust Enrichment/Quantum Meruit, Breach of the Implied Covenant of Good Faith and Fair Dealing, Civil Conspiracy, and Tortious Interference with Contract or Prospective Contract. On October 7, 2014, the trial court entered an agreed Order withdrawing 5 of the claims with prejudice. The remaining claims proceeding to trial included: Breach of Contract under the WPCL, Unjust Enrichment/Quantum Meruit under the WPCL, common law Breach of Contract, and common law Unjust Enrichment/Quantum Meruit.

interpretation of the Policy and the Handbook. According to Appellees, the Handbook and the Policy provided that NPH employees "earned" their leave benefits on January 1 of each year and, thus, would not "earn" their 2002 Benefits until January 1, 2002. Since Appellants were no longer employed by NPH on January 1, 2002, NPH was not contractually obligated to compensate Appellants for 2002 Benefits.

Appellees further argued that the Handbook's and Policy's references to "hours paid during the preceding calendar year," only provide the methodology that NPH would use to calculate the amount of leave benefits an employee "earned" on January 1 of any year.[8] On September 16, 2004, the trial court overruled Appellees' Preliminary Objections.

Almost a decade later, on November 5, 2013, Appellants' attorney filed a Motion for Class Certification, and, at a hearing on the Motion, presented evidence in support of four sub-classes. Appellees opposed class certification. Nevertheless, the trial court approved class certification and divided the class into four subclasses according to, generally, the Appellants' employment status (full-time or part-time) and number of hours worked in 2000.[9] The

---

[8] **See** Appellees' Pre-Trial Statement, 10/9/18, at 5.

[9] Subclass One: part-time *per diem* employees in 2001 who were paid for at least 800 hours of work in 2001. They sought compensation for 2002 **vacation** benefits.

*(Footnote Continued Next Page)*

court appointed Plaintiffs Harley, DiCarlo, and Poyner, all former part-time hourly employees, to represent Subclasses One and Two. It appointed Plaintiff Moody, a former full-time hourly employee, to represent Subclasses Three and Four. In total, the classes represented 586 former NPH employees.

On November 14, 2018, the OAG filed Preliminary Objections to Appellants' First Amended Complaint. On December 6, 2018, the OAG filed a Petition to Intervene. The OAG argued that the trial court lacked subject matter jurisdiction to decide the issues raised by Appellants because they involved the administration of a non-profit corporation. The OAG also asserted that the orphans' court division had mandatory and exclusive jurisdiction. The OAG also complained that Appellants had failed to notify it of the pendency of this action as required by Pa.R.C.P. 235 (describing plaintiff's responsibility to notify the OAG of a proceeding involving a charitable bequest or trust).

Appellants argued that the issues in this case did not fall within the jurisdiction of the orphans' court division because it was simply an employee-employer dispute about leave benefits from 2002. The trial court, however,

_____

Subclass Two: part-time hourly employees who were employed for at least 30 days in 2001 and Appellee hired to work at least 20 hours per pay period. They sought compensation for 2002 **personal leave** benefits.

Subclass Three: full-time hourly employees who completed at least six months of continuous full-time employees during 2001. They sought compensation for 2002 **vacation** benefits.

Subclass Four: full-time hourly employees who were employed for at least 30 days of full-time employment in 2001. They sought compensation for 2002 **personal leave** benefits.

granted the OAG's Petition to Intervene, concluding that the OAG had standing as *parens patriae* to participate. The court did not, however, agree that the orphans' court division had mandatory and exclusive jurisdiction over the matter.

Prior to the commencement of trial, the parties filed numerous motions *in limine*. Relevant to the instant appeal, both parties filed motions to preclude the other from introducing evidence they viewed as contrary to their respective interpretations of the term "earn" in the Policy and Handbook.

Of most significance to this appeal, the trial court, on February 5, 2019, interpreted the Policy and Handbook as providing as a matter of law that Appellants "earned" their 2002 Benefits during 2001. In particular, the trial court held that "the benefits at issue were 'earned' by reason of performance, *i.e.*, services rendered, prior and up to the time of termination at 11:59 PM on December 31, 2001." Order, 2/5/19 at ¶ 5.

On February 27, 2019, the jury trial commenced.[10] At trial, Appellants presented the testimony of the four named plaintiffs and a damages expert, Timothy Hilbert, CPA. Mr. Hilbert testified that on December 31, 2001, NPH terminated the employment of 586 employees who, based on the trial court's determination that employees "earned" their 2002 Benefits during 2001, were

---

[10] Prior to the commencement of trial and by agreement of the parties, Appellants and the "Universal Defendants" entered into a mutual general release discontinuing and dismissing all claims against the Universal Defendants. This stipulation released and discontinued plaintiffs' claims against Universal Health Service, Inc., Central Montgomery Medical Center, LLP, North Penn Hospital, LLC, Marc D. Miller, and Alan B. Miller.

eligible for either or both vacation and personal leave benefits and NPH did not provide any records that indicated that NPH paid them for the leave benefits that the employees earned during 2001.

Appellees presented expert testimony from Jeffrey Press, CPA, as well as lay testimony, in support of their argument that Appellants had received their 2001 benefits on January 1, 2001, and were not entitled to 2002 Benefits under NPH's Handbook and Policy because NPH no longer employed the class members on January 1, 2002.

Appellees also presented evidence and testimony in support of their defense that Appellants suffered no loss because Universal hired Appellants on January 1, 2002, to perform the same jobs with the same, or better, wages, leave benefits, and seniority. Since Universal provided Appellants with the same, or better, leave benefits for 2002 as those that NPH would have provided, Appellees asserted that Appellants had not sustained any damages.

Following the close of evidence and during jury deliberations, the jury asked to see a copy of the Policy. Before providing the jury with a copy of the Policy, the trial court, consistent with its earlier Order, redacted the language the provided that "each employee earns vacation hours on January 1." The trial court did so because of its "prior ruling that the issue [of when Appellants earned vacation hours] was a legal determination" that the court had already made. Letter, 10/14/20, at 2.

The jury returned a verdict in favor of all subclasses on their breach of contract claims but awarded damages only to Subclass One. The trial court

explained that the jury awarded damages only to Subclass One because "while the [amount of damages] may have been clear in [Appellants'] Counsel's mind, they were not clearly presented to the jury either by [Appellants'] expert or by [Appellants'] Counsel as to what each individual class was seeking, with the exception of [S]ubclass [One]."  Trial Ct. Op., 6/29/20, at 54.

The jury also rejected Appellants' claim for liquidated damages under Section 260.10 of the WPCL, concluding that Appellees had established a good faith basis for not compensating Appellants for their 2002 Benefits.

**Post-Verdict Motions**

All parties filed post-trial motions.  Relevantly, Appellees requested that the trial court enter judgment notwithstanding the verdict ("JNOV") in its favor with respect to the claims involving Subclass One and/or a new trial on liability and damages.  On July 15, 2019, the trial court denied all post-trial motions. The lower court clerk entered Judgment in accordance with the jury's verdict, and these cross-appeals followed.  All parties and the trial court complied with Pa.R.A.P. 1925.

**Issues Raised on Appeal**

Appellees, HealthSpark Foundation and David T. Shannon, raise the following issues in their cross-appeal:

1. Whether, in a class action claiming breach of contract for fringe benefits, this Court should vacate the judgment in favor of one of four subclasses and enter JNOV for [Appellees] where: (i) [Appellants] did not prove that they, or the class, were "offered" and "accepted" an offer for the fringe benefits they claim; (ii) the trial court clearly erred by misinterpreting the *only* writings [Appellants] introduced to prove an offer;[] (iii)

[Appellants] did not prove that [Appellees] breached a contract for benefits; (iv) [Appellants] failed to introduce any foundation for their expert's calculation of damages; and (v) [Appellants] received all of the benefits to which they were entitled in every year of employment, [and] hence failed to prove that they sustained a loss?

2. Whether [Appellants] waived any claim for JNOV, and if not, whether any claim for JNOV should be denied as a matter of law?

3. Whether the trial court's admission of limited defense evidence establishing that [Appellants] suffered no loss was an abuse of discretion requiring a new trial?

4. Whether [Appellants] waived any claim for attorneys' fees by not making a timely request, and were properly denied such fees, prejudgment interest and liquidated damages where the jury made no finding that [Appellees] breached the [WPCL], but found [Appellees] acted in good faith, and the trial court concluded [Appellees] caused the extraordinary sixteen-year delay in the case?

Appellees' Brief at 4-5.

Appellants raise the following issues on appeal:

1. Where the entire class sustained damages due to defendant employers' failure to pay for unused benefits earned for work performed in 2001, did the trial court err and abuse its discretion in its rulings on [Appellants'] Motions in *Limine* and in allowing defendants to present pervasive evidence and argument that the damages sustained were mitigated or offset by class members' receipt of comparable or greater benefits for work performed in subsequent employment with a new employer in 2002?

2. Did the trial court err in failing to schedule an evidentiary hearing or any other procedure for receipt of evidence on [Appellants'] timely request for Attorney's Fees/Costs, and then failing to award any legal fees/costs at all?

3. Did the trial court err in failing to award pre-judgment interest to [S]ubclass [One]?

4. Were [Appellant] class members entitled to judgment NOV regarding their right to liquidated damages under the [WPCL], 43 P.S. [§] 260.10?

Appellants' Brief at 1.

The OAG raises the following two issues in its cross-appeal:

1. Inasmuch as this controversy is directly related to, and a result of an earlier-filed Orphans' Court matter approving an asset purchase agreement involving charitable non-profit entities, was this case wrongly brought and litigated in the [t]rial [d]ivision of the [c]ourt of [c]ommon pleas?

2. Did the complete failure of [Appellants] to notify the [OAG] about this litigation, involving charitable non-profit entities, for over 15 years improperly impair the [OAG's] ability to petition to transfer the case to Orphans' Court and otherwise safeguard the public interest as the proceedings went forward?

OAG Brief at 4.

## APPELLEES' CROSS-APPEAL

### Trial Court Erred as a Matter of Law in Determining that Subclass One "Earned" 2002 Benefits in 2001.

In their first issue, Appellees, as Cross-Appellants, assert that the trial court erred as a matter of law in interpreting the Handbook and the Policy in Appellants' favor and in affirming the jury's verdict in favor of Subclass One by denying Appellees' motion for JNOV. Appellees' Brief at 41-50. They argue that, as a result of this legal error, the jury erroneously found that Appellants had "earned" their 2002 Benefits in 2001 and that NPH, therefore, had breached its contract with Appellants by terminating Appellants' employment in 2001 without compensating Appellants for their "earned" 2002 Benefits. Appellees conclude that they are entitled to JNOV. We agree.

**Standard of Review for JNOV**

We review the denial of a request for JNOV for an error of law that controlled the outcome of the case or an abuse of discretion. ***Hutchinson v. Penske Truck Leasing Co.***, 876 A.2d 978, 984 (Pa. Super. 2005). In this context, an "[a]buse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-wil." ***Id.*** (citation omitted).

When reviewing the denial of a request for JNOV, the appellate court examines the evidence in the light most favorable to the verdict winner. ***Thomas Jefferson Univ. v. Wapner***, 903 A.2d 565, 569 (Pa. Super. 2006). Thus, "the grant of [JNOV] should only be entered in a clear case[.]" ***Id.*** (citation omitted).

There are two bases upon which a movant is entitled to JNOV: "one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." ***Rohm and Haas Co. v. Continental Cas. Co.***, 781 A.2d 1172, 1176 (Pa. 2001) (citation omitted). When an appellant challenges a jury's verdict on this latter basis, we will grant relief only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." ***Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.***, 126 A.3d 959, 967 (Pa. Super. 2015) (citation omitted).

Appellees present numerous arguments in support of their request for judgment as a matter of law. We address only one, finding dispositive their argument that the trial court misconstrued the Policy and the Handbook, and, therefore, that the jury erroneously concluded that Appellees breached its contract with Appellants. *See* Appellees' Brief at 48-51.

Subclass One Did Not "Earn" 2002 Benefits in 2001

Appellees' first issue requires this Court to first interpret the vacation benefit policy for part-time employees as set forth in NPH's Policy and Handbook. "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Ragnar Benson, Inc. v. Hempfield Twp. Mun. Auth.*, 916 A.2d 1183, 1188 (Pa. Super. 2007) (citing *Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa. Super. 2005)). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision." *Id.* (citation and brackets omitted).

Our Supreme Court has set forth the principles governing contract interpretation as follows:

> The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself.[ ] When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent,

- 20 -

created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

*Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468-69 (Pa. 2006) (citations omitted).

As stated above, the provision of the Policy relevant to part-time employees provided that: "Vacation hours for part[-]time employees **are earned** on January 1st of **each** year." Policy at II.A (emphasis added).

This provision clearly and unambiguously provides that an employee "earns" vacation leave on January 1. It does not provide that an employee "earns" vacation leave before January 1 of a particular year for use in the next year. Thus, Appellants did not "earn" 2002 Benefits in 2001. To accept the trial court's and Appellants' interpretation of this provision would require us to rewrite this provision to provide that an employee "earns" vacation leave during the course of the year, but cannot use the vacation leave until January 1 of the following year. We cannot and will not rewrite the Policy.

The trial court and Appellants rely on another provision to support their position that part-time employees "earned" their vacation leave days in one year for use in the next year. The relevant provision provides:

Vacation allotment for part[-]time employees is provided at the beginning of each calendar year. The vacation plan provides vacation hours **based on the number of hours paid during the preceding calendar year**[.]

Handbook at 17 (emphasis added).

By its plain language, this provision merely explains that, when calculating an employee's vacation leave for a particular year, NPH considers the number of hours worked by an employee in the prior year. It does not provide that an employee "earns" vacation days in one year for use in the next year. This provision does not even contain the word "earn" and, thus, is irrelevant in determining when an employee has the "earned" vacation leave. Critically, therefore, it does not vest the employee with the rights attendant to having "earned" the vacation leave before January 1.

In light of this clear an unambiguous language, we find that the trial court erred as a matter of law when it determined and informed the jury that Appellants "earned" their 2002 Benefits in 2001.

### Appellees Had No Contractual Obligation to Compensate Appellants for 2002 Benefits

Appellees next assert that, in light of the plain language of the Policy and the Handbook, the jury wrongly determined that Appellees were contractually obligated to compensate Appellants in Subclass One for their 2002 Benefits. Appellees' Brief at 42-48. Thus, they conclude, that they are entitled to JNOV on Appellants' common law and statutory Breach of Contract claims.

To establish a cause of action for breach of contract, a plaintiff must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Pennsy Supply, Inc. v. American Ash Recycling Corp. of Pa.*, 895 A.2d

595, 600 (Pa. Super. 2006) (citation omitted).  It is axiomatic that, where a contract does not exist, a plaintiff cannot, as a matter of law, prevail on a breach of contract claim.

Instantly, Appellees argue that Appellants failed to prove that Appellees had a contractual obligation to compensate Appellants for 2002 Benefits because the language of the Handbook and Policy did not grant to Appellants the right to these benefits until January 1, 2002, and Appellees did not employ Appellants on January 1, 2002.  *Id.* at 42-43, 47.  We agree.

As discussed, *supra*, the Policy and Handbook provide that the members of Subclass One did not earn their 2002 Benefits before January 1, 2002. Since NPH did not employ Appellants on January 1, 2002, Subclass One had no contractual right to 2002 Benefits and Appellees had no contractual obligation to pay Sub-Class One for 2002 Benefits.  Thus, Appellants' common law and statutory breach of contract claims based on Appellees' failure to pay 2002 Benefits fail as a matter of law and the trial court erred by denying Appellees' Motion for JNOV.

In sum, we conclude that the trial court erred in denying Appellees' Motion for JNOV with respect to the verdict in favor of Subclass One.[11]  Thus,

---

[11] In light of our disposition of Appellees' first issue, we need not address Appellees other issues.  We also note that our holding that Appellees had no contractual obligation to compensate Appellants for 2002 Benefits would apply equally as a matter of law to the other subclasses because the relevant provisions in the Handbook and Policy for leave benefits provide that an employee does not "earn" leave benefits until January 1 of a particular year. *(Footnote Continued Next Page)*

we reverse the Order denying Appellees' Motion for JNOV, vacate the judgment in favor of Subclass One, and remand for entry of JNOV in favor of Appellees as to Subclass One's claims.

## APPELLANTS' APPEAL

In their appeal, Appellants challenge the trial court's admission of testimony Appellants characterize as "mitigation or offset" evidence, and the trial court's denial of Appellants' claims for attorney's fees, pre-judgment interest, and statutory damages. *See* Appellants' Brief at 28-68, 69-74, 74-80, 81. Appellants' challenges are based on the assumption that the trial court correctly found that Appellants "earned" 2002 Benefits in 2001. Because we have concluded that the trial court erred as a matter of law in finding that Appellants "earned" 2002 Benefits in 2001, and in not entering judgment in favor of Appellees, Appellants' challenges are moot. In other words, whether the trial court erred in its evidentiary ruling is irrelevant because it erred in not entering judgment in favor of Appellees as a matter of law. Similarly, because Appellants cannot establish as a matter of law that they had a contractual right to leave benefits, Appellants have no claim to attorney's fees, pre-judgment interest, and statutory damages.

---

Since the jury awarded Appellants in the other subclasses no damages, Appellees did not request that the trial court enter a JNOV for those verdicts and thus, we need not address any claims that Appellees might have asserted for those verdicts.

- 24 -

**OAG's APPEAL**

The Court of Common Pleas Did Not Lack Subject Matter Jurisdiction

In its first issue, the OAG asserts that the trial court wrongly determined that it, and not the Montgomery County Orphans' Court, had subject matter jurisdiction over Appellants' claims. OAG Brief at 18-24. In particular, the OAG argues that the orphans' court division had mandatory and exclusive jurisdiction pursuant to 20 Pa.C.S. § 711(21) and Pa.R.J.A. 2156(1), because "the allegedly improper situation [Appellants] attempted to challenge via litigation would not have existed at all[] but for the [o]rphans' [c]ourt's approval of the 2001 [APA]." *Id.* at 20. Although the OAG concedes that transfer to the orphans' court division is impracticable at this time given the procedural posture of the case, it seeks a declaration from this Court that the trial court "erred as a matter of law in failing to recognize any jurisdictional problem and by giving the problem short shrift when it was squarely raised." *Id.* at 22-23.

Subject matter jurisdiction is defined as "the power of the court to hear cases of the class to which the case before the court belongs, that is, to enter into inquiry, whether or not the court may ultimately grant the relief requested." *See Lowenschuss v. Lowenschuss*, 579 A.2d 377, 380 n.2 (Pa. Super. 1990). Matters involving the subject matter jurisdiction of the courts of common pleas are questions of law, and, as such, our standard of review is *de novo* and our scope of review is plenary. *See Copestakes v. Reichard-Copestakes*, 925 A.2d 874, 875 (Pa. Super. 2007).

The OAG argues that 20 Pa.C.S. § 711(21) and Pa.R.J.A. 2156(1) conferred mandatory and exclusive jurisdiction over this matter in the orphans' court division because Appellants' claims involved a charitable nonprofit corporation.

"The orphans' court's jurisdiction is purely a creature of statute." *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 815 (Pa. Super. 2017) (citation omitted).  That court is required, in relevant part, to exercise jurisdiction over matters involving, "[t]he administration and proper application of funds awarded by an orphans' court or an orphans' court division to a nonprofit corporation[.]".  20 Pa.C.S. § 711(21).  Pa.R.J.A. 2156 provides that orphans' court divisions have jurisdiction over corporate matters "where is drawn in question the application, interpretation[,] or enforcement of any law regulating the affairs of nonprofit corporations holding or controlling any property committed to charitable purposes[.]"  Pa.R.J.A. 2156(1).

Here, the trial court rejected the OAG's invocation of the orphans' court's jurisdiction, observing that:

> [Appellants] brought a breach of contract and WPCL action against several defendants, not just [the non-profit entity HealthSpark], and requested a jury trial.  As [Appellees] and the OAG are well aware, [o]rphans' [c]ourt does not conduct jury trials. [Appellants] were not attacking the asset purchase and transfer of funds to [HealthSpark] but, rather, were claiming a loss of benefits under unilateral contract law and the WPCL.

Trial Ct. Op., 6/29/20, at 46.  Furthermore, the Commonwealth Court, in its order transferring this appeal to this Court aptly recognized that "this matter does not concern the corporate affairs of a non-profit[.]"  Order 10/23/19.

- 26 -

We agree with the trial court that, because Appellants' Complaint raised claims of breach of contract and violations of the WPCL and did not directly raise any issues regarding the corporate affairs of a non-profit, the trial court properly exercised subject matter jurisdiction over this action. *See **Robinson**, **supra*** at 815-16 (finding that the trial court properly exercised subject matter jurisdiction over a breach of contract action brought against an estate because the plaintiff's complaint did not raise any issues regarding the administration of the estate). Accordingly, the OAG is not entitled to the relief it seeks.

<u>OAG's Challenge to the Verdict in Favor of Subclass One</u>

In its second issue, the OAG challenges the propriety of the verdict in favor of Subclass One, asserting that Appellants' failure to notify it of the pendency of this matter for over fifteen years impaired its ability to safeguard the public's interest. OAG Brief at 25-29. In light of our conclusion that Appellees are entitled to JNOV with respect to the verdict in favor of Subclass one, we find this issue moot.

**<u>Conclusion</u>**

For the reasons stated above, with respect to Subclass One, we reverse the trial court's Order denying Appellees' Motion for JNOV as to the verdict in favor of Subclass One and remand for entry of JNOV in favor of Appellees as to Subclass One's claims. With respect to Subclasses Two, Three, and Four, we affirm the jury's verdict and the trial court's denial of Appellees' Motion for JNOV as to those subclasses. We affirm the trial court's denial of Appellants'

and OAG's Motions for JNOV in all respects. Accordingly, we direct the trial court to enter judgment for Appellees and against Appellants as to Subclass One's claims and not to disturb the judgment as to Subclasses Two, Three, and Four.[12]

Judgment reversed in part and affirmed in part; case remanded for entry of JNOV in favor of Appellees as to the claims asserted by Subclass One. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/21

---

[12] We deny as moot Appellants' June 21, 2021 Renewed Motion to Supplement the Certified Record.