J-A13010-23

2023 PA Super 183

| | | |
|---|---|---|
| THE ESTATE OF ANN JEFFERS HOGARTY, THE ANN JEFFERS HOGARTY TRUST, SUSAN H. HARRINGTON, ANN J. KAULL, MARGARET A. HOGARTY, MICHAEL J. HOGARTY, TIMOTHY R. HOGARTY AND MATTHEW P. HARRINGTON | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | No. 153 MDA 2022 |
| v. | : : : : | |
| JEFFERS FARMS, INC., JAMES JEFFERS AND DOROTHY HAGENBUCH | : : | |

Appeal from the Order Entered December 22, 2021
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2018-00752

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.*

OPINION BY BOWES, J.:                     **FILED: SEPTEMBER 26, 2023**

The Estate of Ann Jeffers Hogarty, The Ann Jeffers Hogarty Trust, Susan

H. Harrington, Ann J. Kaull, Margaret A. Hogarty, Michael J. Hogarty, Timothy

R. Hogarty, and Matthew P. Harrington (collectively, "Plaintiffs") appeal from

the order that:  (1) granted the motion for summary judgment filed by Jeffers

Farms, Inc., James Jeffers, and Dorothy Hagenbuch (collectively,

"Defendants") based upon a finding that Plaintiffs' claims were barred by the

statute of limitations and laches, and (2) denied as moot Plaintiffs' motion for

partial summary judgment against Defendants.  We affirm.

_____

* Former Justice specially assigned to the Superior Court.

The underlying "litigation involves a dispute over stock certificates from a family-owned tree farming business, Jeffers Farms, Inc., which is located in Hartford Township, Susquehanna County, Pennsylvania[,]" as well as Ann Hogarty's entitlement to shares with voting rights. Trial Court Opinion, 12/22/21, at 1. By way of background, Ann's grandfather, Henry Jeffers, Sr., incorporated Jeffers Farms in 1949. He transferred 160 shares of common stock to each of his three children, namely Louise Hagenbuch, Emily Ruedemann, and Henry Jeffers, Jr., Ann's father. In the 1950s, Mr. Jeffers, Sr. gifted additional shares to his grandchildren, including Ann. Of relevance, she and her brother, Henry Jeffers, III each received sixty shares of common stock.

In 1961, the board of directors of Jeffers Farms proposed a resolution to the other shareholders to create two new classes of stock known as Class A shares, which had voting rights, and Class B shares, which did not. All the shareholders, including Ann, approved the resolution. Particularly, the resolution specified that one share of common stock would be converted into one Class A share and three Class B shares, and that each new share, regardless of class, would hold the same value:

> WHEREAS, the Articles of Incorporation of this corporation provide that the authorized capital stock of this corporation consists of 500 shares of common stock with a par value of $100.00 per share, of which 480 shares are issued and outstanding, and it is the opinion of the Board of Directors that the number of shares of authorized capital stock shall be reclassified to consist of 2,000 shares of which 500 shares shall be voting Class A common stock with a par value of $25.00 per share, and 1,500 shares shall be non-voting

> Class B common stock with a par value of $25.00 per share; and further that each issued and outstanding share of common stock with a par value of $100 per share shall be surrendered in exchange for 1 share of voting Class A common stock with a par value of $25.00 per share and 3 shares of non-voting Class B common stock with a par value of $25.00 per share.

Defendants' Brief in Opposition to Plaintiffs' Motion for Summary Judgment, 9/24/21, Exhibit A (Deposition of Henry Jeffers, III, 9/14/18, at Exhibit P-1 (document entitled "Stockholder's Meeting" and discussing July 12, 1961 meeting of the shareholders)); *see also id*. at Exhibit D-9 (same).

Following the resolution's passage, Ann received 240 Class B shares in exchange for her sixty shares of original common stock. She did not receive any Class A shares. In 1972 and 1973, Mr. Jeffers, Jr. transferred some of his Class A shares to Mr. Jeffers, III. In turn, Mr. Jeffers, III transferred some of his Class B shares to Ann so that the two children of Mr. Jeffers, Jr. would maintain the same total value of shares in Jeffers Farms. Subsequently, Mr. Jeffers, III transferred his Class A shares to his son, James Jeffers. Ann, likewise, transferred her Class B shares to her children, Susan Harrington, Ann Kaull, Margaret Hogarty, Michael Hogarty, and Timothy Hogarty.

Ann passed away in 2015. In 2017, the executors of Ann's estate attempted to obtain the sixty Class A shares that they believed Ann was entitled to pursuant to the 1961 resolution. Specifically, they contended that Ann's sixty original shares common stock should have been converted into sixty Class A shares and 180 Class B shares, not the 240 Class B shares that she received. Defendants refused to issue the shares of stock, and on June 1, 2018, Ann's estate commenced the instant civil action against Defendants

to compel production and delivery of sixty Class A shares. Additional members of Ann's family and the Ann Jeffers Hogarty Trust subsequently intervened in the action. Eventually, Plaintiffs filed an amended complaint, which alleged counts at law and equity of fraud, reformation, negligent misrepresentation, unjust enrichment, declaratory judgment, and constructive trust.

Defendants filed an answer and new matter, claiming that Plaintiffs' claims were barred for various reasons. Plaintiffs filed a reply. In February of 2019, Defendants filed a motion for judgment on the pleadings seeking to dismiss all counts. Among their several arguments, Defendants averred that all claims were barred by either the statute of limitations or the equitable defense of laches. Plaintiffs filed an answer and both parties filed briefs in support of their positions. Following oral argument, the trial court denied Defendants' motion as to the statute of limitations and laches defenses to allow for additional discovery to develop the factual record as to "when [Ann] reasonably could have discovered that she did not receive the voting shares" to which Plaintiffs claimed she was entitled. Trial Court Opinion, 5/17/19, at 9. The court, nonetheless, granted Defendants' motion for judgment on the pleadings as to some of the other issues raised by Defendants, which are not pertinent to the instant appeal.

Following additional discovery and various motions, Plaintiffs and Defendants filed cross motions for summary judgment. Plaintiffs sought an "[o]rder interpreting the terms of the 1961 Shareholders' Agreement" and "declaring that Ann . . . became the holder of sixty shares of Class A stock" in

1961 as a result thereof. Motion for Partial Summary Judgment, 10/9/20, at 2. Defendants, for their part, maintained, *inter alia*, that Plaintiffs' claims were barred by the statute of limitations and they had failed to establish any fraudulent concealment to toll the statute. **See** Defendants' Motion for Summary Judgment, 6/17/21, at 9-12.

Oral argument was held on September 30, 2021. Thereafter, the trial court entered the underlying order, which granted Defendants' motion for summary judgment based upon all claims being barred by the statute of limitations and the doctrine of laches, and denied as moot Plaintiffs' motion for partial summary judgment. Specifically, the court determined that the statute of limitations began to run in 1961, when Ann received only Class B shares, and that neither the discovery rule nor the doctrine of fraudulent concealment tolled the statute of limitations. Therefore, it concluded that Plaintiffs were barred from bringing their 2018 action against Defendants. **See** Trial Court Opinion, 12/22/21, at 11-15. While the court agreed with Plaintiffs that a plain reading of the resolution supported their interpretation that each shareholder was entitled to receive one Class A share and three Class B shares for each original share of common stock exchanged, thereby entitling Ann to sixty Class A shares in 1961, it concluded that the disposition of Defendants' motion for summary judgment mooted Plaintiffs' motion. **Id**. at 18-19.

Plaintiffs timely filed a notice of appeal and, upon order from the trial court, filed a concise statement of errors complained of on appeal pursuant to

Pa.R.A.P. 1925(b). In response, the trial court directed us to its December 22, 2021 opinion and order. Plaintiffs raise the following issues for our consideration:

I. Should Defendants' motion for summary judgment be denied, where Plaintiffs' claims did not accrue in 1961, but rather accrued in 2017 and 2018 when Defendants refused Plaintiffs' demands to recognize the Class A stock Plaintiffs received from Ann Hogarty and to allow Plaintiffs to exercise their voting rights as holders of Class A stock?

II. Should Defendants' motion for summary judgment be denied, where even if Plaintiffs' claims accrued in 1961, genuine disputes of material fact preclude summary judgment on Defendants' statute of limitations and laches defenses?

III. Should Plaintiffs' motion for partial summary judgment be granted, where under the plain meaning of the Resolution, Ann Hogarty became an actual owner of 60 shares of Class A stock and 180 shares of Class B stock when she surrendered to the Company 60 shares of common stock pursuant to the Resolution?

Plaintiffs' brief at 5 (reordered for ease of disposition).

We consider Plaintiffs' challenge to a grant of summary judgment within the following legal parameters:

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. Our scope of review is plenary. In reviewing a trial court's grant of summary judgment, we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Wright v. Misty Mountain Farm, LLC***, 125 A.3d 814, 818 (Pa.Super. 2015) (cleaned up). It is axiomatic that summary judgment may be entered "[o]nly where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law[.]" ***Id***. (cleaned up). Finally, since "[t]he application of the statute of limitations to an alleged cause of action is a matter of law to be determined by the court[,]" we review *de novo* an order granting summary judgment based upon a finding that the claims were barred by the statute of limitations. ***See Valley Nat'l Bank v. Marchiano***, 221 A.3d 1220, 1222 (Pa.Super. 2019) (cleaned up).

Turning to Plaintiffs' first claim, we must determine when the statute of limitations began to run. "Generally, a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted." ***In re Risperdal Litig.***, 223 A.3d 633, 640 (Pa. 2019) (cleaned up). An injury is inflicted "when . . . the corresponding right to institute a suit for damages arises." ***Gleason v. Borough of Moosic***, 15 A.3d 479, 484 (Pa. 2011). Pennsylvania law dictates that complaints of reformation, declaratory judgment, and unjust enrichment "must be commenced within four years[,]" 42 Pa.C.S. § 5525; complaints of fraud and negligent misrepresentation "within two years[,]" 42 Pa.C.S. § 5524; and complaints of constructive trust "within five years[,]" 42 Pa.C.S. § 5526. "[O]nce the prescribed statutory period has expired, the complaining party is barred from bringing suit." ***Gleason***, ***supra*** at 484. (cleaned up).

Defendants aver that the claims accrued in 1961, when Ann received only Class B shares. Plaintiffs, on the other hand, allege that they did not accrue until 2017 and 2018, when Defendants refused to allow Plaintiffs to vote via the Class A shares to which Ann was entitled. As noted, the trial court agreed with Defendants that the statute of limitations began to run in 1961 when Ann exchanged her original stocks and received no Class A shares in return. **See** Trial Court Opinion, 12/22/21, at 11.

Plaintiffs claim the trial court erred in this regard. At the outset, they reject the import of Ann receiving certificates stating that she only received Class B shares because as a "matter of fact and law" Ann "became an actual owner of Class A shares in 1961." Plaintiffs' brief at 28. They posit that the certificates were incorrect and should not be considered as evidence of what class of shares she received. Rather, they argue that Ann's claims did not accrue in 1961 because she was entitled to Class A shares when she exchanged her common stock in 1961, and, therefore, she *de facto* received Class A shares at that time. Instead, they argue it was not until Plaintiffs attempted to vote in 2017 based upon possession of Ann's unsubstantiated Class A shares and were denied the right to vote that an injury occurred. **See** **id**. at 30-31.

We are not persuaded by Plaintiffs' ideational argument. While we agree with Plaintiffs that pursuant to the 1961 resolution Ann was entitled to Class A shares in 1961, this does not mean that she automatically received them. Were that true, this litigation would not be before us. Rather, it is apparent

from the record that she did not receive the Class A shares to which she was entitled at the time of the conversion. Thus, Ann was injured in 1961 when she did not receive what she was entitled to under the resolution, and that is when the statute of limitations began to run. By virtue of receiving only Class B shares, Ann was on notice that she received no voting shares and was thus injured because the conversion did not comply with the plain language of the 1961 resolution. Indeed, the Plaintiffs' inability to vote arose directly as a result of Ann not being issued Class A shares in 1961. It is of no consequence that Plaintiffs waited until 2017 to first attempt to vote. This is not when the injury arose. Accordingly, we discern no error in the trial court's conclusion that the statute of limitations began to run in 1961 when Ann was deprived of the benefit of the 1961 resolution. Based on the foregoing, Plaintiffs are not entitled to relief on their first claim.

Having determined that the statute of limitations began to run far longer than four years before Plaintiffs initiated the instant action in 2018, we next consider whether the discovery rule or the doctrine of fraudulent concealment tolled the running of the statute of limitations. Before reaching Plaintiffs' arguments, we set forth the relevant legal principles guiding our review of these doctrines.

We begin with the discovery rule, which "provides that where the complaining party is reasonably unaware that his or her injury has been caused by another party's conduct, the discovery rule suspends, or tolls, the

running of the statute of limitations." ***Gleason***, ***supra*** at 484. (cleaned up).

Specifically,

> [t]he discovery rule will toll the applicable statute until a plaintiff could reasonably discover the cause of his action, including in circumstances where the connection between the injury and the conduct of another are not readily apparent. Pennsylvania's reasonable diligence standard is objective; the question is not what the plaintiff actually knew of the injury or its cause, but what he might have known by exercising the diligence required by law.

***In re Risperdal Litig.***, ***supra*** at 640 (cleaned up).

> In determining whether reasonable diligence has been exercised, a court must determine whether the plaintiff exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others. Because this determination typically involves many fact determinations, it is normally for the jury to decide it. Pennsylvania's formulation of the discovery rule represents a more narrow approach than is mandated in some other jurisdictions, as it places a greater burden on plaintiffs because the commencement of the limitations period is grounded on inquiry notice that is tied to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause.

***Id***. (cleaned up).

We bear in mind that these "determinations are fact-intensive inquiries that should typically be left for juries to decide," and, therefore, "summary judgment is appropriately granted only in cases where reasonable minds would not differ in finding that the plaintiff knew or should have known, based upon the exercise of reasonable diligence, of his injury and its cause." ***Id***. at 641 (cleaned up).

Separate from the discovery rule, Plaintiffs also invoke the doctrine of fraudulent concealment, which this Court has explained thusly:

Where, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. Moreover, [the] defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. Mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party.

Moreover, in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied.

***Kingston Coal Co. v. Felton Min. Co.***, 690 A.2d 284, 290–91 (Pa.Super. 1997) (cleaned up).

Plaintiffs argue that "[t]here was a severe power imbalance between Ann . . . and the parties misrepresenting her ownership interest[,]" namely, Ann's father and other family members involved in the operation of Jeffers Farms. Plaintiffs' brief at 34-35. Plaintiffs allege that, beginning in 1961, those family members led a campaign of disinformation meant to mislead Ann as to her voting rights. Plaintiffs state that this is evidenced by the stock certificates which did not mention Ann's ownership of Class A shares, as well as statements from company insiders telling Ann that she did not have voting rights. They argue that because these misrepresentations were often made by family members, Ann was more likely to believe what was said without

- 11 -

further question. Finally, they contend that "[w]hether it was reasonable for Ann . . . to relax her vigilance in reliance on misrepresentations by the [c]ompany's directors regarding her ownership interest is at least a genuine dispute of material fact precluding summary judgment." *Id*. at 36.

The trial court disagreed, finding the discovery rule inapplicable because Ann was a college-educated woman who later worked in real estate and "was not unsophisticated[.]" Trial Court Opinion 12/22/21, at 12. Moreover, she attended the 1961 shareholders meeting and signed the resolution. *Id*. When she exchanged her original sixty shares of common stock pursuant to the 1961 resolution, she received certificates evidencing only Class B shares. She subsequently received more Class B shares from her brother, and expressly transferred her Class B shares to her children. *Id*. Given these facts, the court concluded that Ann

> certainly had the ability, exercising reasonable diligence, to ascertain that she had not received Class A voting shares as required by the 1961 resolution when she exchanged her original common stock shares for the new shares in 1961. Nevertheless, [Ann] failed to complain when she did not receive Class A shares in 1961 nor did she complain when she received additional Class B shares from her brother in 1972 and 1973.

*Id*. at 12-13 (footnote omitted).

As to Plaintiffs' invocation of the doctrine of fraudulent concealment, the court held that Plaintiffs had "failed to present any evidence supporting" their allegation that Ann's family had misrepresented to her that she was not entitled to Class A voting shares. *Id*. at 14. Indeed, the court determined

- 12 -

"[t]here [wa]s nothing in the record showing that there was any act of concealment or fraud on the part of Jeffers Farms that would have prevented [Ann] from discovering that she should have received Class A voting stock." *Id*. at 15 (footnote omitted).

Our review of the certified record bears out the trial court's conclusions. Ann was provided with the language of the 1961 resolution and voted to approve it. Further, it is evident that Ann had actual knowledge of an injury in 1961, when she received only Class B shares instead of a combination of Class A and Class B shares, and again in 2008 and 2009 when she expressly transferred her shares, which only comprised Class B shares and which she described as Class B shares, to her children. Thus, the discovery rule provides Plaintiffs no relief from the application of the statute of limitations because "reasonable minds would not differ in finding that [Ann] knew or should have known, based upon the exercise of reasonable diligence, of [her] injury and its cause" in 1961. *In re Risperdal Litig.*, *supra* at 641 (cleaned up).

As for fraudulent concealment, Plaintiffs were unable to provide any evidence that Ann was informed that she was not permitted to vote. Indeed, in discovery depositions, Plaintiffs admitted that they had no knowledge of any documentation or witnesses supporting such allegations. Having provided no evidence supporting the existence of fraudulent or misleading statements made to Ann, they failed to establish any "independent act of concealment upon which [Ann] justifiably relied." *See Kingston Coal Co.*, *supra* at 291

- 13 -

(cleaned up). Therefore, we conclude that the doctrine of fraudulent concealment is inapplicable. **See id**. at 290-91 (requiring plaintiffs to set forth "clear, precise and convincing" evidence of concealment (cleaned up)). Thus, the statute of limitations was not tolled and Plaintiffs were barred from bringing the instant action.[1]

In light of the foregoing, the trial court did not err in granting summary judgment in favor of Defendants. As such, we discern no error in the court denying as moot Plaintiffs' motion for partial summary judgment. Accordingly, we affirm the trial court's order in its entirety.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/26/2023

---

[1] Since we affirm on the basis of the statute of limitations, we need not consider Plaintiffs' arguments as to the doctrine of laches.