J-A19009-24

2024 PA Super 256

<table>
<tr><td>MARGARET AND JAMES SPOLAR</td><td>:</td><td>IN THE SUPERIOR COURT OF</td></tr>
<tr><td></td><td>:</td><td>PENNSYLVANIA</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>v.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>THE SPOLAR FAMILY TRUST,</td><td>:</td><td></td></tr>
<tr><td>MARGARET M. SPOLAR,</td><td>:</td><td></td></tr>
<tr><td>INDIVIDUALLY AND AS TRUSTEE OF</td><td>:</td><td>No. 482 MDA 2023</td></tr>
<tr><td>THE SPOLAR FAMILY TRUST, AND</td><td>:</td><td></td></tr>
<tr><td>ALL OTHER PERSONS CLAIMING BY</td><td>:</td><td></td></tr>
<tr><td>OR THROUGH THE SAID PARTIES</td><td>:</td><td></td></tr>
<tr><td>AND ALL OTHER PERSONS</td><td>:</td><td></td></tr>
<tr><td>INTERESTED IN THE REAL PROPERTY</td><td>:</td><td></td></tr>
<tr><td>SUBJECT TO THIS ACTION</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Appellant</td><td>:</td><td></td></tr>
</table>

Appeal from the Judgment Entered March 20, 2023
In the Court of Common Pleas of Susquehanna County
Civil Division at No(s):  2018-972

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.E.:                **FILED: NOVEMBER 1, 2024**

The Spolar Family Trust and Margaret M. Spolar (collectively, "Appellants") appeal from the judgment entered March 20, 2023, after the non-jury verdict in favor of Margaret and James Spolar (collectively, "Appellees") in the amount of $133,000.00. We affirm.

The trial court set forth the relevant factual history:

1. [Appellee] Margaret Spolar (hereinafter referred to as Daughter) is the daughter of [Appellant] Margaret M. Spolar (hereinafter referred to as Mother).

_____

[*] Former Justice specially assigned to the Superior Court.

2. [Appellee] James Spolar (hereinafter referred to as James) is the current husband of Daughter.

3. [Appellant] Spolar Family Trust is a trust created in 2017 which currently holds title to the disputed real estate located in Forest Lake Township, Susquehanna County, Pennsylvania (hereinafter referred to as the 20-acre parcel [or disputed real property]).

4. Mother and her husband, Thomas Spolar, acquired the 20-acre parcel in 1972.

5. Mother owns an additional 55-acre parcel of real property that she and her husband acquired in 1968 which is adjacent to the 20-acre parcel.

6. After the 20-acre parcel was acquired by Mother and Thomas Spolar, Daughter improved the real property by having a well drilled, septic installed and excavation and grading completed.

7. Mother encouraged Daughter to construct her residence on the 20-acre parcel.

8. After graduating high school and getting married in September 1978, Daughter placed a trailer on the disputed real property and began living there with her then-husband, Edward Birchard.

9. Daughter obtained electricity in her name for the trailer located on the 20-acre parcel.

10. Thereafter, Daughter began to build a residence on the disputed real property.

11. In building the residence, Daughter had the assistance of her family members, including her father, Thomas, as well as her younger twin brothers, Gregory and Michael.

12. Daughter never took out a mortgage to build the home but paid for things gradually when she had the money to complete the work.

13. As a result, the construction of the house took decades to complete but Daughter was living in the residence prior to October 1981 and simply continued to work on completing the residence when she had the funds and/or time to do so.

14. Daughter did not complete the residence until the 2000's.

15. Despite the passage of several decades, Daughter maintained many of the receipts documenting the monies she spent on construction of the residence. Daughter had produced $16,197.36 in receipts.

16. In July 1989, Daughter and Edward Birchard were divorced.

17. In Daughter's separation agreement, Edward Birchard waived "all his right, title and interest in and to *the marital residence*." There was no indication in the separation agreement that Daughter owned the real property upon which the marital residence was situated.

18. On July 20, 1989, in a divorce hearing, Daughter testified under oath that her parents owned the real property upon which the marital residence was located but that she and her husband had built and owned the marital residence itself. Upon being questioned by the court later in the proceeding, Daughter again admitted that she lived in a home located on her parents' real property.

19. In 1989, Daughter married James and he began to reside with her in the residence located on the 20-acre parcel.

20. Mother likewise permitted her two younger sons to build their residences on the 55-acre parcel. Daughter and her two younger brothers were expected to pay the real estate taxes and insurance for their respective residences as well as maintain the real property.

21. In August 2005, Daughter obtained a bail bond to secure the release of her children from incarceration in Lehigh County and Daughter provided a deed of trust to the bail bond company using the 20-acre parcel as collateral.

22. In 2015, Daughter and James moved to Missouri.

23. Despite living in Missouri, Daughter continued to maintain the 20-acre parcel as well as pay utilities, insurance and taxes and Daughter would stay at the residence when she returned to Susquehanna County for visits.

24. After Daughter moved to Missouri, there were discussions within the family, including offers personally made by Mother, to purchase Daughter's interest in her residence but those discussions never reached fruition as the parties had different views as to the value of Daughter's interest.

25. Luke Spolar is the son of Daughter and the grandson of Mother. He grew up in the residence located on the 20-acre parcel. He never heard Mother contest Daughter's ownership of the residence.

26. Ernest Loessy, Mother's brother, was a frequent visitor to Mother's residence and, after it was built, to Daughter's residence. Loessy indicated that Mother announced at Daughter's wedding that Daughter was going to build her own house on the 20-acre parcel.

27. Michael Lutz, a friend of the Spolar family since approximately 1987, heard Mother admit that Daughter owned the house on the 20-acre parcel and that Mother was proud of Daughter for building the home with her own funds without the need to obtain a mortgage. On several occasions, Lutz heard Mother say that Daughter and her husband Ed Birchard paid for the house paycheck-by-paycheck.

28. After Daughter had moved to Missouri, Mother asked Daughter to allow another grandchild to move into the residence on the 20-acre parcel but Daughter refused the request.

29. In 2017, Mother created the Spolar Family Trust, which is an irrevocable trust, for which Daughter is a beneficiary.

    a. The Spolar Family Trust Agreement specifically provided Daughter the "right to reside in [her] [residence] . . . and pay necessary utilities and upkeep."

    b. The Spolar Family Trust Agreement also provided Mother, as the trustee, with the power to "lease property for any period of time and give options of any duration for sale, exchange or leases."

c. The Spolar Family Trust Agreement, however, fails to explain whether the Trustee's power to lease trust property supersedes Daughter's right to reside in her residence.

30. Mother did not notify Daughter that she had created the Spolar Family Trust nor did Mother advise Daughter that the 20-acre parcel had been placed into the Spolar Family Trust.

31. On June 12, 2018, Mother, as trustee of the Spolar Family Trust, posted an eviction notice on Daughter's residence notifying her that she was to vacate the residence located on the 20-acre parcel.

a. The eviction notice did not identify the provision of the Spolar Family Trust Agreement that conferred upon Mother, acting as trustee, the power to remove Daughter from the residence that the Spolar Family Trust Agreement specifically gave Daughter the right to utilize.

32. After posting the eviction notice and taking possession of the 20-acre parcel, Mother allowed another grandchild to move into Daughter's residence.

33. Daughter paid the real property taxes for the 20-acre parcel from 1978 until the initiation of this litigation. The real property taxes, however, remained in Mother's name.

34. Mother never executed any deed conveying the 20-acre parcel to Daughter.

35. Prior to posting the eviction notice, Mother made offers through third parties to purchase Daughter's interest in the residence and/or real property.

36. Excluding Daughter's residence, the 20-acre parcel has an appraised value of $102,000.00.

37. If Daughter's residence is included in the appraisal, then the 20-acre parcel coupled with Daughter's residence has a value of $235,000.00.

38. As such, Daughter's residence increased the appraised value of the 20-acre parcel by $133,000.00.

Trial Court Opinion, 12/28/22, at 2-8 (footnotes and record citations omitted).

After the eviction notice was placed on Daughter's residence, Appellees filed suit against Appellants. Appellees included five counts: quiet title, declaratory relief, unjust enrichment, conversion/misappropriation of royalties, and a request for injunctive relief. After a two-day trial, the trial court found for Appellants as to all counts but unjust enrichment. The trial court consequently held that Appellants own the 20-acre parcel, but because Mother encouraged Daughter to build her home on the 20-acre parcel, Mother was unjustly enriched by the increased value of the 20-acre parcel and awarded Appellees the difference in value between the land without the residence and the land with the residence, i.e., $133,000.00.

Appellants filed a motion for post-trial relief. The trial court granted it in part and denied in part. The trial court granted it solely to amend paragraph 18:

> [Appellants'] motion to post-trial relief is GRANTED IN PART as it relates to a limited Finding of Fact made in the first sentence of Paragraph 18 in the December 18, 2022 Opinion, which shall be amended to read as follows: "On July 20, 1989, in a divorce hearing, Daughter testified under oath that her parents owned the real property upon which the marital residence was located but that she and her husband owned the marital residence itself. (Plf. Ex. 13, at 3.)" The remainder of Paragraph 18 is hereby confirmed.

Order, 3/9/23, at 1. All other arguments raised in Appellants' post-trial motion were denied.

- 6 -

On March 20, 2023, judgment was entered for Appellees in the amount of $133,000.00. Appellants timely appealed and complied with the trial court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b).

Appellants raise three claims:

1. Did the trial court err in finding in favor of Appellees and against Appellants on Appellees' claim for unjust enrichment because the statute of limitations barred such claim?

2. Did the trial court err in finding in favor of Appellees and against Appellants on Appellees' claim for unjust enrichment because Appellees received a benefit and/or benefits which barred such claim?

3. Did the trial court err in awarding Appellees damages in the amount of $133,000.00?

Appellants' Brief, at 10 (unnecessary capitalization and suggested answers omitted).

Our scope and standard of review regarding non-jury verdicts is as follows:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial court must be given the same weight and effect on appeal as the verdict of a jury. We consider evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary. The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*El-Gharbaoui v. Ajayi*, 260 A.3d 944, 958 (Pa. Super. 2021) (brackets and citation omitted).

The resultant verdict was an equitable decree, and as such, we accept the factual findings of the trial court "because the demeanor and credibility of witnesses, as well as conflicts in the evidence presented, are issues solely determined by the trier of fact and, therefore, beyond the scope of review of appellate courts." *Wilson v. Parker*, 227 A.3d 343, 352 (Pa. Super. 2020) (citation omitted). Furthermore, we find no abuse of discretion in the trial court's findings of fact, as all are supported in the record.

Appellants first argue the statute of limitations on Appellees' claim of unjust enrichment expired on July 20, 1993, as that is four years after Daughter admitted she did not own the land upon which she built her home. *See* Appellants' Brief, at 15. The trial court and Appellees assert Appellants waived this claim by failing to plead the defense of statutes of limitations with sufficient specificity. *See* Trial Court Opinion, 12/28/22, at 21 n. 12; Appellees' Brief, at 10-11.

"A statute of limitations defense is generally raised in new matter." *El-Gharbaoui*, 260 A.3d at 962 (citing Pa.R.Civ.P. 1030(a)).

> The statute of limitations is an affirmative defense which must be specifically pleaded, or the defense is waived. An affirmative defense, including a statute of limitations defense, may not be raised by general averment but, rather, must be supported by factual allegations sufficient to give rise to the affirmative defense.

*Id.* at 963 (brackets, quotation marks, and citations omitted).

Appellants here simply averred in their new matter "Plaintiffs' claims are barred by the statutes of limitations." Answer and New Matter, 8/20/18, at 10. We agree with the trial court and Appellees this claim is waived for failure to raise it with the trial court with sufficient specificity. Appellants' "threadbare declaratory sentence" stating all claims are waived without any elaboration is not sufficient to present the affirmative defense of statute of limitations. *Gharbaoui*, 260 A.3d at 963. Therefore, Appellants' first claim is waived.

Even if not waived, we would find Appellants are not entitled to relief on their first claim. The statute of limitations for unjust enrichment is four years. *See* 42 Pa.C.S.A. § 5525(a)(4); *Sevast v. Kakouras*, 915 A.2d 1147, 1153 (Pa. 2007) (unjust enrichment is an action based upon a contract implied at law and therefore has a four-year statute of limitations). "Generally, a cause of action accrues, and thus the applicable statute of limitations begins to run, when an injury is inflicted. An injury is inflicted when the corresponding right to institute a suit for damages arises." *Estate of Hogarty v. Jeffers Farms, Inc.*, 303 A.3d 482, 488 (Pa. Super. 2023) (quotation marks, ellipsis, and citations omitted).

Appellants assert "Appellees' claim arose on July 20, 1989, when [Daughter] acknowledged and testified under oath [in her divorce proceedings] that she was not the owner of the [20-acre parcel]." Appellants' Brief, at 16. Therefore, Appellants believe the statute of limitations expired on July 20, 1993. *See id.* We disagree.

Daughter was permitted to live on the 20-acre parcel until an eviction notice was placed on her door in 2018 by Appellants. At all times prior to the eviction notice, Daughter believed she owned the home on the 20-acre parcel, a belief buttressed by Mother's actions as Mother frequently told people Daughter owned the home on the 20-acre parcel. Therefore, no injury was inflicted until Daughter was informed that she no longer was permitted to reside on the 20-acre parcel. While Daughter may have known the land was not hers in 1989, she was not aware the home she built was not hers until Appellants evicted her. As the trial court aptly held:

> [Appellees] cause of action for unjust enrichment only ripened after Mother tried to evict Daughter from the home on June 12, 2018. Until that time, [Appellees] could not have known that they were injured, i.e., that Mother was disputing Daughter's alleged ownership of the home that Daughter built on Mother's 20-acre parcel. Since the right to institute their claim did not attach until 2018 and [Appellees] filed their claim on July 16, 2018, a little more than a month later, their claim for unjust enrichment would not have been barred by the applicable statute of limitations.

Trial Court Opinion, 12/28/22, at 21 n. 12. The trial court's factual findings are supported by the record, which established Mother actively encouraged Daughter to build her home on the 20-acre parcel and held out her Daughter as the owner of the home. *See* N.T. Trial, 6/17/22, at 38, 101, 126, 160, 170. As the injury was not inflicted until June of 2018, and Appellees filed suit approximately a month later, Appellants' first claim of error fails.

Appellants next argue the trial court erred in finding they were unjustly enriched because "Appellees clearly received a significant benefit for over 35

years [because Daughter was permitted to live on the property rent-free].”

Appellants' Brief, at 21-22.

> As the term "unjust enrichment" implies, recovery under that doctrine requires (1) an enrichment that (2) was unjust. This is a matter of equity, and, to succeed, the plaintiff must prove:
>
> > (1) benefits were conferred on defendant by plaintiff;
> > (2) appreciation of such benefits by defendant; and
> > (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. In determining if the doctrine applies, our focus is *not on the intention of the parties*, but rather on whether the defendant has been unjustly enriched.

***Wilson***, 227 A.3d at 353 (brackets, ellipsis, and citations omitted; emphasis in original). "Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." ***Artisan Builders, Inc. v. Jang***, 271 A.3d 889, 893 (Pa. Super. 2022) (citation omitted). We have further defined unjust enrichment as the defendant either "wrongfully secured or passively received a benefit that [] would be unconscionable for her to retain." ***Mark Hershey Farms, Inc. v. Robinson***, 171 A.3d 810, 817 (Pa. Super. 2017) (citation omitted).

The trial court found Appellees met their burden of proving unjust enrichment for the following reasons:

> Mother encouraged Daughter to build a home upon the 20-acre parcel — and Mother did so when Daughter was still a teenager having just graduated from high school. Mother likewise promoted Daughter's decision to perform the construction work slowly and over time so as to avoid the need to obtain a loan to

- 11 -

finance the construction. Based upon this encouragement, and Daughter's belief that she was the owner of her residence, Daughter invested all of her savings and earnings into constructing a home upon the 20-acre parcel. While Daughter understood that Mother continued to own the underlying real property, Daughter believed that she owned the residence itself. This belief was confirmed in Daughter's divorce proceeding, which occurred a decade after Daughter began construction on her residence and 30 years prior to this litigation, wherein she reiterated she owned the residence but not the 20-acre parcel. Over the years, Mother confirmed this understanding to other family and friends when she would express her pride for Daughter's accomplishment in building her own home without having to borrow any money to do so. Mother conceded to various third parties that Daughter was the owner of the residence on the 20-acre parcel.

The record plainly establishes that Mother not only knew that Daughter was constructing a residence on the 20-acre parcel but that Mother actively promoted and encouraged Daughter to construct the residence. Daughter's construction efforts spanned several decades as the home was not completed until approximately 2000 and, even thereafter, Daughter continued to make improvements or repairs including installing a new roof just prior to Daughter relocating to Missouri. Mother remained aware of the efforts that Daughter was undertaking to improve and maintain the residence on the 20-acre parcel. Daughter's efforts resulted in a substantial financial benefit to Mother as the value of the 20-acre parcel was increased by $133,000. As such, Daughter conferred a benefit to Mother, namely, constructing a residence on Mother's property, and Mother appreciated that benefit, namely, an increase in her property value by $133,000.

Mother's retention of the property appreciation of $133,000 would be inequitable given the circumstances presented in this case. Daughter not only constructed the residence on Mother's property but Daughter likewise paid all of Mother's expenses (real property taxes and insurance) relative to the 20-acre parcel and continued to maintain the residence for a period of roughly 35 years. Throughout this period of time, Mother actively reinforced Daughter's belief that she owned the residence itself even though Mother had never conveyed the real property to her. After Daughter moved to Missouri, Mother actively engaged in negotiations with Daughter relative to a purchase of Daughter's

- 12 -

residence. It was not until the parties were unable to agree upon a value for Daughter's residence that Mother asserted absolute ownership over not only the 20-acre parcel but Daughter's residence as well. As a result of Daughter's efforts, which were encouraged and promoted by Mother with the understanding that Daughter owned her residence, the value of Mother's 20-acre parcel has appreciated by $133,000. Given Mother's encouragement of Daughter's efforts to build the residence, coupled with Mother's repeated confirmation that the residence belonged to Daughter which thereby encouraged Daughter to continue making additional improvements and repairs to the residence itself, it would be inequitable to allow Mother to retain $133,000 in increased value of the 20-acre parcel that is wholly attributed to Daughter's actions. For these reasons, Daughter has presented sufficient evidence to prove her unjust enrichment claim against Mother in the sum of $133,000.

Trial Court Opinion, 12/28/22, at 18-21 (footnotes and citations omitted).

The trial court did not err in making this determination. Appellants' claim that Appellees were permitted to live rent-free and therefore received their own benefit of the arrangement flies in the face of logic. Daughter never would have built the home on Mother's land if Daughter did not believe she owned the home. *See* N.T. Trial, 6/17/22, at 160. Daughter produced many receipts and photographs at trial that showed her progression of clearing the lot, installing electric, building the septic, drilling the well, and the construction of the home. *See id.* at 152, 153, 158-159, 165, 166, 192-193, 239-251, 257, 260-290. The trial court found credible Daughter's testimony that she paid for

- 13 -

everything. We cannot disturb that finding. *See Wilson*, 227 A.3d at 352. Appellants' second claim does not merit relief.[1]

In Appellants' final claim, they assert the trial court erred in agreeing with the Appellees' appraisal of the value of the property. *See* Appellants' Brief, at 23-24. The trial court adopted the Appellees' appraisal as to both the land with the house and without. Appellants did not present their own appraisal of the land. Appellants argue the trial court should not have accepted the appraisal as credible because the appraiser did not enter the property, Appellants presented evidence the inside of the home had mold, and the date of the appraisal was "at a high point in the real estate industry." *Id.* at 23. We disagree.

As noted above,

> [w]e accept the factual findings of a trial court sitting in equity, if they are largely dependent upon the credibility of witnesses because the demeanor and credibility of witnesses, as well as

_____

[1] We note Appellants further argue the court erred in finding they were unjustly enriched because Daughter has the right to move back into the property at any time under the provisions of the Spolar Family Trust. *See* Appellants' Brief, at 22. However, Appellants do not explain how Appellees have this right when other family members currently reside in the residence with the permission of Appellants. *See* N.T. Trial, 10/17/22, at 119, 144. The trial court specifically found: "The Spolar Family Trust Agreement… fails to explain whether the Trustee's power to lease trust property supersedes Daughter's right to reside in her residence." Trial Court Opinion, 12/28/22, at 7. Appellants do not dispute this factual finding nor explain whether Daughter's right supersedes the current residents' right to remain in the residence. As such, we address this claim no further. *See Dockery v. Thomas Jefferson University Hospitals, Inc.*, 253 A.3d 716, 721 (Pa. Super. 2021) ("When an appellant's argument is underdeveloped, we may not supply her with a better one.") (brackets and citation omitted).

conflicts in the evidence presented, are issues solely determined by the trier of fact and, therefore, beyond the scope of review of appellate courts.

***Wilson***, 227 A.3d at 352 (quotation marks, ellipsis, and citation omitted). We will not disturb the factual findings of the trial court if they are supported by competent evidence. ***See id.***

The trial court's finding of the difference in value of the 20-acre parcel with and without the home is based upon competent evidence. Appellants stipulated the appraiser was an expert in the field of real estate appraisals. ***See*** N.T. Trial, 6/17/22, at 7-8. The appraiser determined the value of the 20-acre parcel without the residence to be $102,000.00. ***See id.*** at 9. The appraiser determined the value of the 20-acre parcel with the residence to be $235,000.00. ***See id.*** at 12. The appraiser conducted a drive-by appraisal and did not enter the residence. ***See id.*** The appraiser had been provided pictures of the inside of the home. ***See id.*** at 12-13. Contrary to Appellants' assertion, the appraiser did take into consideration the mold inside the home as he was given a mold report for the residence. ***See id.*** at 13-14. The appraiser listed the condition of the residence as average, partially due to the mold in the residence. ***See id.*** at 14, 27. As the factual determination of the trial court is based upon competent evidence, we will not overturn the court's factual findings. Therefore, Appellants' final claim fails.

Thus, we find Appellants' claims do not merit relief and affirm the judgment entered in the amount of $133,000.00.

J-A19009-24

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/01/2024